SOUTH OMAHA WATER-WORKS COMPANY v. FRANK VOCASEK, ADMINISTRATOR.

FILED OCTOBER 16, 1901. No. 9,815.

Commissioner's opinion, Department No. 1.

1. **Contributory Negligence:** EVIDENCE: GUY-WIRE: ELECTRIC CURRENT: KNOWLEDGE: WARNING. Evidence that deceased, a lad of seventeen years, knew that a guy-wire of an electric-light post carried an electric current, and that he voluntarily laid his hands upon it after being told by a younger companion to watch out and get away, does not conclusively establish contributory negligence where it also appears that the current had been running over this guy-wire for several days, with notice to defendant, and that the wire had been handled, pulled and shaken frequently by various parties during that time, and, a few minutes previously to the fatal occurrence, by deceased, and by other in his presence, without harm.

2. ———: ———: ———: ———: ———: REFUSAL OF INSTRUCTION. Instructions to the effect that if such a lad, knowing such a guy-wire was carrying an electric current, voluntarily took the wire in his hands, his doing so was such negligence as precluded any recovery for his death from the act, *held* properly refused.

3. Next of Kin: RELATIVES: EVIDENCE. Where there was proof tending to show that the next of kin, the father, was receiving from him pecuniary assistance in supporting the mother and brothers and sisters of deceased, it was not error to admit proof of the existence of such relatives.

ERROR from the district court for Douglas county. Tried below before SLABAUGH, J. *Affirmed.*

*Woolworth & McHugh*, for plaintiff in error.

*John C. Cowin, W. C. Lambert* and *A. L. Sutton, contra.*

HASTINGS, C.

Action for causing the death of Robert Vocasek through an electric shock from a guy-wire attached to a post in plaintiff in error's electric lighting plant. Verdict for plaintiff below. Defendant brings error by eighteen assignments, only three of which are relied upon in the briefs and argument: (1) That the evidence conclusively shows such negligence on the part of plaintiff's intestate as to entirely preclude any recovery on account of his death; (2) that the trial court did not properly submit to the jury the issues as to such contributory negligence, particularly in refusing defendant's instructions No. 3 and No. 5; and (3) error in permitting testimony as to the existence of a wife and other children of the deceased's father, the plaintiff. The errors will be discussed in their order.

As to the first, it seems clearly established that the deceased knew before the fatal contact that the guy-wire carried an electric current. It appears also that it had for some days become quite the regular thing for the boys of the vicinity to gather about the post and guy rope and experiment with the current, and defendant's evidence in-

dicates that on the night of the injury twenty-five or thirty or more persons, variously denominated "kids" and "boys," had gathered around the place. It seems that pretty shortly after the lamps were lighted on July 3, 1896, the deceased with one Strangland came to the place and there found one Dwyer; deceased being seventeen, the others fifteen years of age. Strangland touched the guy-wire with a nail stuck through a piece of weed a few inches long and received quite a shock, which he supposes deceased must have known of. Deceased grasped and pulled on or shook the wire twice, dropping it quickly as his companions suppose, because of the shock received. Both of deceased's companions had touched the wire on previous occasions and received some shock. It appears from the testimony of both these lads that other boys were touching the wire that night. It appears also from the testimony of a police officer, Philip Connell, that other boys were catching hold of the guy wire, and pulling it, causing sparks at the point where it rubbed against the electric light wire. It appears that on the second time that deceased seized the wire, one, at least, of his younger companions suggested that he "watch out," to which he replied by asking if doctors did not give electricity to people, and Dwyer replied, "Yes, a certain amount." After something more than a half an hour of this, the two companions tried to coax deceased to "go up town." Strangland at least seems to have used some playful force, but after going some 90 or 100 feet he broke from them and turned back. About 9 o'clock the policeman, Connell, testifies that in crossing the street from the pole and guy wire to Koutsky's saloon, he met deceased, and as he reached the saloon door looked back and saw him throw up his hands and fall, and on going across found him dead. The saloon-keeper, Koutsky, says he saw him put his hands on the wire and he dropped dead. Some effort is made to discredit the two lads who, at the time of the trial, a year later, were still only sixteen years of age. It seems hardly worthy of counsel to do so. Their testimony is not volun-

teered nor seemingly colored by any bias for the defendant, at least, on the part of Strangland, with whom Dwyer's testimony is quite in harmony; and Connell's statement does not necessarily conflict with either, the only discrepancy being as to the time after they left till the fatality occurred, and the disagreement as to that is not serious. The fact that Connell did not see Vocasek till just as he was crossing to his death indicates simply that all three had started away without his observing them, or before he came. There seems no doubt as to the precise character of the occurrences. We are not of the opinion that they constitute *per se* contributory negligence, which must relieve the defendant from liability for this result of its admitted failure to exercise due care of its dangerous current. The fact that a large number of young men and boys were playing with this wire, touching it and catching it and pulling it away from its contact with the other wire, and so making sparks, that deceased himself had with impunity handled it earlier in the evening, was enough to disarm his caution and deprive of its negligent character the contact which killed him. Unless the doctrine is true, which counsel partly claim in their brief, but expressly renounced at the argument, that a youth of seventeen is to be presumed to know and consider even against the evidence of his own eyes and sense of touch, that a waste current of electricity through a guy wire is dangerous, then this is not *per se* contributory negligence.

As to the second point, instruction No. 3 asked by defendant expressly tells the jury that voluntarily taking hold of a wire carrying a current from an electric light wire was such negligence as precludes recovery for the resulting death. If the foregoing conclusion as to the effect of such a condition of affairs with such a degree of continuance as in this case is correct, the instruction was rightly refused. Instruction No. 5, also refused, is to much the same effect, with the additional suggestion that if the deceased had a reasonable belief that his action was safe, it was still negligent. As we have concluded that

what he had seen and experienced was sufficient to give the youth a reasonable belief that his action was safe, and therefore it was not negligent, it follows that this instruction was rightly refused. The fact that sparks came from the point of contact of the wires when the guy-wire was pulled would seem to indicate that pulling broke the connection, and the fatal result was rather due to his simply seizing the wire, as described by the witness Koutsky. But whatever weight might be given to the suggestion that the fatal current was due to deceased's pulling of the wires into contact, if taken by itself, the other matter in this instruction 5 vitiates it. It can hardly be possible that our youth are required, at the peril of their lives, to learn the actual, as distinguished from the reasonably apparent, qualities of wires stretched in much frequented city streets.

The third error of course has to do only with the amount of damages, and not with the right of recovery. The jury assessed the full amount of damages allowed by the statute, and it is claimed that the trial court should not have permitted testimony that plaintiff had a wife, the mother of Robert, and other children, his brothers and sisters. Defendant claims that these facts appear in other parts of the record without objection, and if their appearance at the place complained of is error it is without prejudice. Of course, the establishment of the poverty of plaintiff, or the dependence upon him of the mother and other children, as a direct ground for the jury's action upon the matter of damages, is wholly inadmissible. The cases cited by plaintiff in error seem, so far as we have examined them, to be of that nature. Such is Judge Cooley's line of argument in *Chicago & N. W. R. Co. v. Bayfield*, 37 Mich., 205. But where it is claimed that deceased at the time of the injury was contributing to the assistance of the next of kin, his father, in the performance of the latter's legal duty of supporting the mother and other children, the fact of the existence of such mother and other children would seem

to be entirely admissible, not as à direct ground for the jury's action, but as showing what deceased was doing and likely to do to make his life pecuniarily valuable to plaintiff. The evidence is admissible not as establishing directly a greater right to consideration from the jury, but as showing what consideration plaintiff was actually receiving, and likely to receive in the future from this son.

It is therefore recommended that the judgment of the lower court be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.