# CHARLESTON

Bice v. Wheeling Electrical Company.

Submitted June 15, 1907.     Decided November 19, 1907.

1. Electricity—*Action for Negligence—Pleadings.*
    In an action against an electrical company for injury from an electric wire, a count in the declaration alleging the duty of the defendant in respect to its electrical apparatus to be the exercise of "all possible care" to prevent injury, but charging by way of breach that it did not use "all possible care" and also that it did not use "reasonable care," is not demurrable because it so alleges the duty of the company. (p. 690.)

2. SAME—*Degree of Care Required.*

Electrical companies are required to exercise the highest degree of care in reference to the condition, maintenance and inspection of their wires and appliances. (p. 691.)

3. NEGLIGENCE—*Res Ipsa Loquitur.*

Where the agency causing an injury is under the management and control of the defendant, and the injury is such as in the ordinary course of things does not occur if those having such management and control use proper care, it affords reasonable evidence, in absence of explanation by the defendant, that the injury resulted from negligence, and the rule of *res ipsa loquitur* applies. (p. 691.)

4. TRIAL—*Instructions.*

In an instruction which tells the jury to consider "among other things" certain facts in the evidence, the words quoted do not render the instruction bad as authorizing them to consider any and all things that might occur to them whether or not shown in evidence, as they are presumed to know that they can believe and act only on the evidence. (p. 691.)

5. NEGLIGENCE—*Minors.*

The age and general information of an infant, when his contributory negligence is involved, are prominent facts, bearing thereon which may be specially given in charge to the jury, although not to the exclusion of all other facts and circumstances. (p. 692.)

6. TRIAL—*Instructions.*

An instruction in reference to contributory negligence which singles out and calls the attention of the jury to a particular point in the evidence that is indecisive and a mere circumstance bearing upon such issue of fact, omitting reference, except by use of the words "in connection with the other facts and circumstances of the case," to all other important circumstances in proof, is erroneous and misleading as giving undue prominence to such indecisive point. (p. 692.)

7. SAME.

An instruction to support which there is no evidence in the case is improper, and should not be given. (p. 695.)

8. SAME—*Interrogatories.*

In this case, as all the evidence centered on the condition of the defendant's transformer, and alleged negligence with respect to proper inspection thereof, and this question, which was the only one the defendant had reasonably the right to propound to the jury for a special finding, was fully covered by an interrogatory given and answered, the following interrogatory was rightly refused as too general in its terms: "Did the defendant do

everything that could reasonably be done under the circumstances to prevent the injury of which the plaintiff complains?" (p. 695.)

9. SAME—*Answer to Interrogatories.*

In a case of negligence where the rule of *res ipsa loquitur* is applicable, involving the defective condition of defendant's electrical transformer which caused the injury the rebuttable presumption of negligence retains its original force until overcome by proof of affirmative acts of due care of the defendant; and, if the evidence is wanting of substantial proof of anything done by defendant to keep its transformer in order, the jury are justified in response to the interrogatory, "Did the defendant do all that could be reasonably done under the circumstances to keep its transformer in order?" in answering, "We do not know." (p. 695.)

10. ELECTRICITY—*Contributory Negligence.*

Under the circumstances of this case, the question of the contributory negligence of the plaintiff, a boy between sixteen and seventeen years of age, was properly submitted to the jury. (p. 699.)

Error to Circuit Court, Ohio County.

Action by George Bice against the Wheeling Electrical Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

J. B. SOMERVILLE, for plaintiff in error.

HUBBARD & HUBBARD, for defendant in error.

MILLER, PRESIDENT:

The plaintiff, George Bice, between sixteen and seventeen years of age, sustained severe and permanent injuries in March, 1904, by an excessive voltage of electricity from a flexible wire cord in the blacksmith shop of one Rogerson on Twenty Ninth Street in the city of Wheeling. There were five of these cords in the shop, with incandescent lights attached, dropped from the main service wire above, all served with electricity from the defendant's main conductor carried from its plant upon poles over said street, one of which poles stood directly in front of the shop. The lamps on the inside wires were constructed to carry 104 volts. In order to reduce the voltage from the 2080 volts carried by the main conductor, a mechanism called a trans-

former was installed upon the pole in front of the shop. This transformer consisted of a primary and secondary coil of wire, separated by micanized cloth, all enclosed in a sheet-iron case filled with oil, the oil serving as additional insulation; the primary coil being connected, through the transformer, with the main conductor, and the secondary connected with the service wires inside the shop through the transformer and what is called a main cut-out, the cut-out being located in this instance immediately above the front door of the shop. This main cut-out consisted of a porcelain device fastened to the wall of the shop, so adapted as to connect alternating wires by meltible fuses. Other smaller cut-outs were installed at the point of connection of the flexible cords with the main service wire inside the shop. The wires in the shop were all insulated after the usual method. The secondary coil in the transformer was so adapted, if the latter was in order, to take up by induction through the insulation therein and convey to the service wires but 104 volts; but if the insulation became defective from any cause, a much larger current, if not the the entire voltage of the main conductor, would be served to the inside wires. These wires, with cut-outs and transformer, had been installed for something over two years. The plaintiff was employed at intervals in the shop, and had frequently carried the lamps on the flexible cords from point to point in the shop to aid in the shoeing of horses. The injury of which the plaintiff complains occurred early in the morning after a heavy rain during the night. In going to the shop on the morning in question, Rogerson found the door knob charged with electricity and could not open it; nor did a passer-by who tried succeed in doing so; but it was finally opened by a man wearing rubber boots, which served as insulators. On going inside and picking up his leather apron, Rogerson found it electrified. He discovered also that some horse shoes hanging on an iron rod attached to the wall were also charged with electricity; and, as the plaintiff and others dropped into the shop that morning, some sport was made by procuring them to pick up or touch the shoes, resulting in slight shocks, more or less irritating according to the physical condition of the person; but no one sustained any injury

therefrom, the electrical phenomena being attributed to the dampened condition of the building due to the rainfall. After a time it was observed by some one in the shop that the joist or beam from which one of the drop lights hung was smoking and that the wire at that point was sparking. The attention of Rogerson being directed to this, he called upon the plaintiff to assist him in moving the wire; whereupon the plaintiff seized the flexible cord or wire, and, in the act of pulling it away, the current broke through the insulation on the wire. The current was so strong as to render him unconscious, burning his left hand severely and later necessitating amputation of three fingers thereof, also passing through his body and out at the heel and toe of his left foot, burning them also severely; and he sustained other injuries not necessary to refer to. The agents of the defendant, who made the only investigation after the accident, reported the main cut-out in order and the fuses intact, but that on removing the transformer the insulation between the primary and secondary coils was found punctured and the oil burned. One of the men in the shop discovered also, after the accident, in attempting to tie a horse to the iron ring on the pole on which the transformer was installed, that the ring was so electrified that he could not tie the horse; and another of the men who undertook to tie the horse to the ring was unable to do so, but did succeed in tying the strap around the pole. These were the main facts relied upon at the trial, resulting in the verdict and judgment for the plaintiff for $1,700.00.

The amended declaration, upon which the trial was had, in four counts, charged it to be the duty of the defendant to use all possible care and prudence to keep said transformer in good working order, so that no quantity of electricity dangerous to human life and limb and sufficient to escape through the insulation should be permitted to pass beyond said transformer, to inspect at reasonably frequent intervals its wires and all appliances connected therewith, and to use all possible care and prudence to keep said wires and appliances in perfect order and repair; to provide, pursuant to the ordinance under which it operated, a cut-out at a point as near as possible to the entrance of the shop, so that any surplus quantity of electricity should be hindered

from entering the same; to also provide, pursuant to said ordinance, whenever a connection was made between a larger and smaller conductor at the entrance to or in a building, some approved automatic device, and introduce the same in the circuit of the smaller conductor, so as to interrupt the current whenever in excess of safe carrying capacity, "safe carrying capacity" being defined by the ordinance as a current which could be carried by the wire without becoming painfully warm when grasped in the closed hand. By way of assigning breach of defendant's duty, the first count charged that it did not use all possible care and prudence to keep its transformer in good working order, and did not use reasonable care to that end, but negligently allowed the same to become out of order and to permit dangerously large currents of electricity to pass into said shop, and sufficient to escape through the insulation on the wires therein into the body of the plaintiff; the second count, that the defendant did not use all possible care and prudence to keep its said wires in perfect order and repair, and failed to make proper inspection of its wires and appliances, but negligently permitted dangerous currents of electricity to pass through said wires into the body of the plaintiff; the third count, that the defendant failed to provide the cut-out required by said ordinance, and negligently permitted a dangerously large quantity of electricity to enter said shop and pass over its wires into the body of the plaintiff; the fourth count, that the defendant failed to provide the automatic device required by said ordinance, and negligently permitted currents of electricity in dangerous quantities to pass over the same into the body of the plaintiff.

The overruling of the demurrer to this declaration and each count is the first error assigned. It is claimed that the first and second counts were bad for alleging the duty of the defendant to be the exercise of all possible care, when only reasonable care was imposed by law. The first count charged not only that the defendant did not use "all possible care," but also that it did not use "reasonable care," while the second charged that the defendant failed to make proper inspection of its wires and appliances and to keep the same in good order—or, in effect, did not observe reasonable care therein; so that, even though the duty

may have been alleged in excessive terms, the breach charged would not be in the range of criticism. But our decisions require the defendant to use the highest degree of care, which we think can not be construed to be less than all possible care. *Snyder* v. *Electrical Co.*, 43 W. Va. 661; *Thomas* v. *Electrical Co.*, 54 W. Va. 395. We might supplement these cases by reference to and discussion of the wealth of other decisions to the same effect, but will refer to only two others: *Alexander* v. *Light Co.*, 209 Pa. 571, and *Electrical Co.* v. *Lawrence*, (Col.) 73 Pac. Rep. 39. We think the demurrer was properly overruled.

The plaintiff at the trial did not rely upon any proof of affirmative acts of negligence, but upon the rule of *res ipsa loquitur*, as applied in *Snyder* v. *Electrical Co.* and *Thomas* v. *Electrical Co.*, *supra*. The defense was, in part, that there was no appliance known by which the transformer could be tested; that the insulation therein had probably been punctured by lightning in the thunder storm the night before; but the main defense was alleged contributory negligence of the plaintiff. There was conflicting evidence respecting the practicability of inspection of the transformer. One witness for defendant, an expert and a salesman of this particular transformer, said that generally they take the cover off and make a casual inspection to see whether the parts are all right and the transformer is filled with oil; that one of the companies within his territory has the practice of from time to time examining its transformers on the poles; that such examination satisfies the company that the transformer is working under usual normal conditions. Other witnesses for the defendant gave some evidence respecting this subject of more or less indefinite and uncertain character.

The other errors assigned relate to the giving and refusing of instructions; the refusal to submit to the jury one of the special interrogatories hereinafter referred to; the refusal to set aside the verdict and award a new trial, and to render judgment for the defendant *non obstante veredicto*.

First, with respect to the instructions. Two of the instructions given for the plaintiff were objected to and covered by bills of exception. The first was intended to invoke

the rule of *res ipsa loquitur.* It told the jury that if they "believe from the evidence that the injury for which the plaintiff sues was caused by an excessive voltage of electricity from the defendant's plant, and that in the ordinary course of things such excessive voltage is not found in wires like that which injured the plaintiff, if those who have the mangement of the electricity use proper care," then the defendant "is called upon to offer some reasonable explanation of the occurrence, and if such explanation is not furnished the circumstance itself affords reasonable evidence that the injury was caused by the negligence of the defendant." We think this instruction propounds the law correctly upon the theory of the plaintiff, and is supported by the authorities already cited; and we do not think it subject to the criticism of unwarranted interference with the province of the jury.

The second instruction for the plaintiff was as follows: "The jury can not find the plaintiff guilty of contributory negligence unless they believe from the evidence that he had fair reason to expect that his act in touching the wire would cause him serious injury. On this question the jury should consider, among other things, so much of the evidence as indicates the plaintiff's age, his knowledge of electricity, his knowledge of this particular wire, the general circumstances in the shop at the time of the accident, and the conduct of the other persons just before the accident with respect to the electricity in the shop." The criticism of this instruction is that the words "among other things" left the jury to infer that they might consider anything and all things that might possibly occur to them, whether or not shown in evidence; that it singles out certain facts and circumstances, regardless of others shown in evidence, and tells the jury to consider those facts and circumstances thus giving them undue prominence, and omits certain facts and circumstances vastly more important, in determining the question of contributory negligence, than those referred to in the instruction. As illustrating the omitted facts, the conduct of the plaintiff and others in the shop prior to the accident, in what is termed recklessly toying with various objects therein charged with electricity, is referred to, and particular reference is made to the declaration of wit-

ness Gilmore to Rogerson in the presence of plaintiff that he had better go and telephone the electric light people, that there was something wrong there.  We do not think the jury could have been misled by the words "among other things."  They must necessarily have understood that the other things which they were authorized to consider were other things shown in evidence.  They are presumed to know that they can believe and act only on the evidence.  *Jarrett* v. *Stevens*, 36 W. Va. 452. , Neither do we think the instruction gives undue prominence to the plaintiff's age, his knowledge of electricity, his knowledge of this particular wire, etc., to the exclusion of the other circumstances referred to by counsel.  The instruction compassed in general terms every fact or circumstance covered by the evidence applicable to the subject of contributory negligence, and certainly the testimony of Gilmore and the conduct of the other persons in the shop.  The instruction, it is true, was intended to direct the minds of the jury to the age and intelligence of the boy with respect to the agency of his injuries; but not to the exclusion of any other fact or circumstance, so as to bring the instructions within the condemnation of *McMechen* v. *McMechen*, 17 W. Va. 683, and *Storrs* v. *Feick*, 24 W. Va. 606, cited by counsel.  The age and general information of an infant in such cases are prominent facts which we think the authorities permit to be specially given in charge to the jury, although not to the exclusion of all other facts and circumstances; an infant's case is in that respect exceptional.  *Oakland Railroad Co.* v. *Fielding*, 48 Pa. 320; *Haynes* v. *Raleigh Gas Co.*, 114 N. C. 203; *Kehler* v. *Schwenk*, 144 Pa. 318; see also *Railway Co.* v. *Riley*, 27 W. Va. 163.

Five instructions were given at the request of the defendant, but the court modified the first and rejected four others, which actions of the court are made the subject of four additional bills of exception.  As modified by the addition of the words italicised, the first instruction was: "The court instructs the jury that the defendant in this case was not an insurer of the safety of George Bice at the time he received the injury out of which this suit grows, and was only bound to use reasonable care, under all of

the facts and circumstances of the case, to guard against injuring him; *but reasonable care under the facts and circumstances of this case means a very high degree of care.*" We are cited to *Washington* v. *Railroad Co.*, 17 W. Va. 190, for the proposition that negligence is the doing of something which under the circumstances a reasonable person would not do, or omission to do something in the discharge of a legal duty which under the circumstances a reasonable person would do; and to *Jordan* v. *Benwood*, 42 W. Va. 312, for the rule that a party has a right to have an instruction given in his own language, if pertinent, unambiguous, and correct in law. There is no question about the correctness of these propositions; but the cases we have already cited hold that, in cases involving the employment of such a dangerous agent as electricity, reasonable care means the highest degree of care which skill and forethought can attain. Without the modification of the instruction by the court, the jury were liable to be misled. We perceive no error, therefore, in giving the instruction as modified.

As to the first three of the instructions of defendant refused, the action of the court thereon was, in our judgment, on the border line of error. If these instructions be not amenable to the rule against singling out certain facts to the exclusion of other facts of equal or greater importance, they come within the condemnation of the rule against calling the attention of the jury to particular points in the evidence which are indecisive and mere circumstances bearing upon the issue of fact, and omitting reference to other important circumstances in proof. Sackett Instruc. 18; *Graves* v. *Colwell*, 90 Ill. 612; *Chesney* v. *Meadows*, 90 Ill. 430. The first calls the attention of the jury to the charged condition of the horse shoes and the amusement obtained therefrom, the second to the condition of the wire in question, the third to the evidence of any warning given those in the shop in the presence of Bice as to conditions there, and each told the jury to consider the circumstance specified, "in connection with the other facts and circumstances of the case," in determining the question of contributory negligence, neither calling the attention of the jury, except in the uncertain method indicated, to any

other fact or circumstance covered by the evidence to which the instructions have intended to allude. It is said in Hughes on Instruc., section 114, that singling out some particular question or point and calling the attention of the jury to it is not objectionable when the other questions involved are merely subordinate and are sufficiently adverted to by other instructions. The instructions here involved, however, make prominent indecisive facts, not controlling ones, and give undue prominence thereto.

The fourth instruction of the defendant refused told the jury that unless they believed from the evidence Bice was employed in the shop or connected with the operation thereof, at the time of the injury, it owed him no duty·in regard to protection of said shop from the over-charged condition of the electric wires therein, and that they should consider this, in connection with the other facts and circumstances of this case, on the subject of his contributory negligence. This instruction was not applicable to any evidence in the case. The evidence was positive that Bice had been from time to time employed by Rogerson as an assistant, and at the time he sustained his injuries he was called upon particularly by Rogerson to aid him in removing the wire. For this reason, as well as for the reasons given for the rejection of the three other instructions of the defendant, the court was justified in rejecting this one also.

The rejected interrogatory was: "Did the defendant do everything that could reasonably be done, under the circumstances, to prevent the injury of which the plaintiff complains?" Plaintiff's counsel contends that the words "under the circumstances" rendered the meaning of this interrogatory uncertain; that it might exclude the duty of inspecting the transformer; that an affirmative answer to it might have ignored the doctrine of *res ipsa loquitur*, peculiarly applicable to cases like the present, where the agency causing the damage was peculiarly within the control of the defendant and the plaintiff without access thereto. The defendant's counsel claims that an affirmative answer to the interrogatory would have been decisive of the case, and that it was an abuse of the discretion of the court, for this reason, to reject it, as affirmed in *Kerr* v. *Lunsford*, 31 W. Va, 660, *Bridge Co.* v.

*Bridge Co.*, 34 W. Va. 155, and *Andrews* v. *Mundy*, 36 W. Va. 22. We are disposed to think the interrogatory was too general in its terms. It did not refer to any particular duty with respect to any certain part of the defendant's plant or appliances, that it might be said to have done everything it reasonably could have done under the circumstances; nor did it point out what particular circumstances or affirmative acts that may have been shown in evidence, with respect to the discharge of its duties, were referred to. We think, as practically all the evidence centered on the condition of the transformer and alleged negligence with respect to proper inspection thereof, and this subject was fully covered by another interrogatory propounded—namely, "Did the defendant do all that could be reasonably done under the circumstances to keep its transformer in order?" to which the jury responded, "We do not know"—thus covering the only question the defendant had reasonably the right to propound to the jury, there could be no reversible error in refusing to submit the rejected interrogatory.

The other errors assigned relate to the action of the court on the motions to set aside the verdict and award a new trial, and to render judgment for defendant *non obstante veredicto*, and to the question of contributory negligence of the plaintiff. It is argued, on said motions, that the only negligent acts charged in the declaration were failure to keep its transformer in good working order, failure to properly inspect its wires, and failure to provide a proper cut-out; that there was no proof of any defect in the wires; that the jury found in response to one of the interrogatories that the defendant had provided the cut-out required by the city ordinance; and that therefore nothing was left upon which the plaintiff's case could rest except the condition of the transformer. The defendant's counsel would thus separate transformer from wires and *vice versa*—a rather fine distinction, considering that the transformer is simply a system of wires connected, by insulation and the service wire in the shop, to the main conductor. In our opinion the charge in the declaration of the breach of duty of defendant at reasonably frequent intervals to inspect its wires and all electrical appliances connected there-

with, was sufficient to admit proof of want of proper in-
spection of the transformer. It is argued that there is no
evidence tending to show anything wrong with this trans-
former prior to the morning on which the appellee was in-
jured, and that the condition of the transformer may have
resulted from the thunder storm the night before the in-
jury. But there was evidence tending to show the pres-
ence of an unusual amount of electricity in these wires prior
to the morning the plaintiff sustained his injurie; and there
was evidence showing a lack of oil in the transformer when
subsequently inspected. The plaintiff's injuries were sus-
tained in the month of March, when we take judicial notice
of the fact that electrical storms are usually of slight force,
not generally sufficient to materially injure or affect elec-
trical apparatus such as here involved. Only one witness
states there was a thunder storm the night before; a num-
ber refer to the rainfall, but he alone connects it with
thunder, and no mention is made by him of any lightning.
Besides, it is claimed that the direct question of the de-
fendant's negligence with respect to the transformer was
submitted in the interrogatory referred to, "Did the de-
fendant do all that could be reasonably done under the cir-
cumstances to keep its transformer in order?" and that the
answer of the jury, "We no not know," was inconsistent
with the general verdict, which must necessarily imply an
affirmative answer. As already indicated, witnesses gave
on behalf of the defendant testimony that inspection of a
transformer was possible. It was admitted by the defendant
that it had never inspected its transformer from the time
of installation. The evidence is wholly wanting of any-
thing done by the defendant to keep the transformer in
order. As was said in *Reynolds* v. *Electric Lighting Co.*,
26 R. I. 457, a case relating to a defective transformer:
"The questions, who purchased it, and when; how long was
it in service, and what was its service; what was its condi-
dition at the time of its installation at the place where it
gave out; was it worn out or suddenly disabled; was it ever
inspected after its last installation? and others as pertinent, re-
mained unanswered." In this case these pertinent inquiries
were not covered by the defendant's evidence; and the jury
may well have answered, in response to the interroga-

tory propounded, "We do not know." As was said in the Rhode Island case, so it may be said here:. "The transformer was an apparatus wholly under the control of the defendant, and its breaking down, or functional derangement, is inferentially evidence of negligence on the part of the defendant; thus making out a *prima facie* case for the plaintiff, and casts upon the defendant the burden of rebutting the same to the satisfaction of the jury." It is evident from their answer that the jury did not consider the defendant had overcome the *prima facie* presumption of negligence arising from the defective condition of the transformer and the over-charged wires. The defendant's counsel says the general verdict for the plaintiff would necessarily involve the finding of negligence on the part of the defendant, based on a *prima facie* case. Was not the answer of the jury to the interrogatory equivalent to saying that the defendant, on whom the burden was, had not satisfied them it had done everything that could have been done to keep its transformer in order? We think this a reasonable construction of the answer of the jury. Until the jury were enabled from the evidence to give an affirmative answer to the interrogatory, the rebuttable presumption of negligence remained intact, and so long as it was not overcome, or remained in equilibrium, it held its original arbitrary character given it by law. See *Graves* v. *Colwell*, 90 Ill. 616 *et seq.* We do not think therefore the answer of the jury is destructive of the general verdict, or that the verdict was otherwise unsupported by evidence of negligence of the defendant; and the motions for a new trial and for judgment *non obstante veredicto* were properly overruled. The questions of fact were peculiarly within the province of the jury.

Was the verdict vitiated by contributory negligence of the plaintiff? Unless we can say as a matter of law, from the facts proven, the plaintiff was guilty of contributory negligence, this subject was also within the peculiar province of the jury. This we can not do. The subject was properly submitted to the jury. Their general verdict denies it. In *Oakland Railway Co.* v. *Fielding*, *supra*, the injuries complained of were sustained by a boy between sixteen and seventeen years of age, who stepped into a hole in a railroad

crossing while running after a fire-engine at night. It was said: "Whether or not the plaintiff's son was guilty of negligence or misconduct which contributed to the injury was a question for the jury; and where they were instructed, in estimating the degree of care required to consider the age, intelligence and physical strength of the boy, and apply to his conduct the same standard that they would in judging of boys of like age, strength and intelligence, and that if it was common for such boys to run with fire-engines, as the plaintiff's son did at the time of the accident, the jury should take the fact into consideration in determining whether his conduct was reasonably prudent when he was injured, the instruction was held not erroneous." See also *Haynes* v. *Raleigh Gas Co.* and *Kehler* v. *Schwenk, supra* In *Predmore* v. *Light & Power Co.*, 99 Hun. 551, an adult, an electrician by profession, in attempting to turn out the lights on an electric wire in a cafe, sustained injuries resulting in his death, for which the action was brought. He had just seen the proprietor of the cafe attempt to turn out the lights, and draw back his hand because of the shock received; and it was held that this fact did not establish that the deceased was guilty of contributory negligence as a matter of law, but that such question was properly submitted to the jury. We think these cases state the rule correctly and are applicable to this case. The question of contributory negligence was a jury question; and we can not say their verdict was over-borne by a preponderance of the evidence.

We are therefore of opinion to affirm the judgment.

*Affirmed.*