KENTUCKY-TENNESSEE LIGHT & POWER COMPANY v. CLAUDE E. PERRY, Administrator.

Western Section. October 23, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

Van Dyke & Cox, of Paris and Harry E. Jones, all of Dresden, for plaintiff in error.

J. W. Thomas and Maiden, McWherter & Gallimore, all of Dresden, for defendant in error.

OWEN, J. The Kentucky-Tennessee Light & Power Company, hereinafter called the defendant, has appealed from a judgment rendered in favor of the plaintiff, in the Circuit Court of Weakley County. The action is for the death of Dale Perry, a young man between seventeen and eighteen years of age, the son of the plaintiff.

The accident occurred on September 8, 1930, in plaintiff's cornfield, near his home, between the towns of Dresden and Gleason, in said Weakley County. The judgment was for $4000. The defendant seasonably filed its motion for a new trial, which was overruled. The defendant perfected its appeal, had a proper bill of exceptions signed, and the defendant has assigned three errors. There was a motion made at the close of all the proof for a directed verdict, which motion was overruled. The assignments of error raise two propositions as follows:

1. The fatal accident to Dale Perry was not caused by any negligence of the Kentucky-Tennessee Company. Its service line was severed and grounded by an act of God, for which it was not responsible, and the current was cut off as soon as it received notice of the nature of the accident and the place where it occurred.

2. Deceased was killed as the result of his own contributory negligence in walking into an obviously dangerous situation of which he had notice, either through curiosity to explore the premises and examine the equipment, or, in a spirit of daring, to go with or in advance of his companions into a position of danger.

The declaration in two counts alleged in substance the following:

(a) At the time of the accident, the Kentucky-Tennessee Company was engaged in the business of manufacturing, selling and distributing electricity for power and lighting purposes, and owned, maintained and operated a certain power line composed of three high-powered wires running across and through Weakley County and the farm where deceased at the time resided with his father, over which it transmitted electricity in the conduct of its business. The wires of said power line were strung on and supported by poles planted in the ground at distances about 250 feet apart and 30 feet above the surface of the ground.

(b) About four o'clock in the morning on September 8, 1930, on the farm occupied by the plaintiff, and in a cultivated field near his residence, during an electrical storm, one of the wires of said power line was burned and broken in two by the electricity accompanying or produced by said storm, or from some other cause, causing the ends of the wire to drop down upon the ground over a distance of two pole-lengths, where it burned in two and was left suspended from the poles.

(c) Plaintiff's son, Dale Perry, a minor seventeen years of age, was attracted to the scene of the broken and suspended wire, and while standing within a few feet therefrom, received the charge of electricity and was killed.

(d) The defendant either turned on said severed wire a current of electricity without notice or warning, which escaped from the end of the suspended wire and came in contact with and entered the body of Dale Perry, causing his death, or said wire, after it was burned in two and left suspended from the pole, was continuously charged with electricity which entered the body of and killed the said Dale Perry at about seven o'clock in the morning of said day.

(e) Defendant was immediately notified of the trouble by one of the plaintiff's neighbors, and of the exact location of the trouble, but failed to investigate and repair the wire until about two hours after notice was received, although it was equipped to make the necessary repairs, and could have reached the point of accident within 15 or 20 minutes.

The defendant filed pleas of not guilty and contributory negligence. Before the conclusion of the trial, plaintiff's declaration was amended so as to allege that defendant's generating plants were located at Martin, Tennessee, and Mayfield, Kentucky, at which

places electric current was generated and transmitted over its high-tension wires to the place of the accident, the plant at Martin being an emergency or auxiliary generating plant.

There is very little disputed evidence found in the record. The only conflict being that a witness for the plaintiff testified, that he called the operator of the defendant company, at Martin, at 5:15 A. M., and informed the person with whom he talked that lightning had struck the power line near where he lived, and requested defendant's operator or engineer to cut off the current. This witness for the plaintiff was Ed Atkinson. Defendant's operator at Martin was Charlie Davison. This telephone conversation between Atkinson and Davison was overheard by a man named Melton, a neighbor of Atkinson. Melton testified that he recognized the voice of Davison, the plant operator at Martin. Melton's telephone and Atkinson's telephone were on the same party line.

Davison denies receiving this message. The undisputed facts are as follows:

Prior to his death, Dale Perry lived on his father's farm located about three and one-half miles southeast of Dresden, Tennessee. He was without family, never having been married. He lacked about one month of being eighteen years of age at the time of his death. He had completed most of the grades of elementary school work, was considered to be an intelligent, bright boy and was strong physically, having engaged regularly in farm work.

Kentucky-Tennessee Company's transmission line occupied an easement or right of way 100 feet in width across the farm on which the father of Dale Perry lived. It consisted of three wires constructed upon insulators and cross-arms attached to poles about 250 feet apart and 30 feet above the ground. It was constructed and maintained in keeping with the highest standard of the art.

About four o'clock A. M., on September 8, 1930, Dale Perry, who was sleeping in the south room of the house, and in the direction of the electric transmission line, was awakened by a light in that direction which he called to the attention of the other occupants of the house. They got up and went out on the porch, and there observed that the light was on top of one of the line poles, where it burned until the wire broke and fell to the ground. It burned brightly, having first the appearance of a ball of fire, and later as though the whole field were on fire, flashing up and down intermittently for sometime. After making these observations, they reentered the house and returned to bed.

The field where the transmission line was located had been cultivated, being then in corn, but the cultivation of the corn had been completed, and it did not require any work or attention at that time of the year.

About seven o'clock Dale Perry, in company with his older brother, Guy Perry, and two elderly men, Osborne and Bradberry, all of whom had observed the burning electric line in the early hours of the morning, went into the field for the purpose of ascertaining what damage had been done to the corn. As they approached, they stopped, looked and listened to observe any sign of electricity or other evidence of danger. Not hearing any sound, they approached nearer, and not hearing nor seeing anything indicating danger from that position, walked up close to one of the poles. One of his companions kicked away the melted wire or insulation which had dropped upon the ground near the pole. They went up to and around the pole from which the broken transmission wire was hanging suspended about 20 inches from the pole and 3 or 4 feet above the ground. All of them except Dale Perry had turned around and were walking away when they heard a hissing, popping sound, and, looking around, found the deceased lying upon the ground, having fallen backwards and from the pole.

It appears that the witness Bradberry, who was the nearest to the deceased at the time the deceased was electrocuted, was knocked down; Bradberry was about two feet from the deceased, but his back was to the deceased. No one saw the deceased touch the suspended wire, he may have touched the suspended or hanging wire by the pole that had been partly burned. The deceased gave two or three gasps after falling; his left hand was burned, also some burns upon his arm and underneath his arm or armpit.

The ground was damp from the rain which had fallen during the night. The deceased was in his bare feet, which further enhanced the danger from electricity, his body forming natural contact between the severed wire and the ground.

Davison, the night engineer for the defendant, went on duty at 6 P. M., the evening of September 7th, and left the plant at 6 A. M., September 8th. He admits that he received a report of trouble on his line about 5:15 A. M., of the 8th, but it was in regard to a transformer burning out at Gleason; Gleason being a few miles southeast of the place where Dale Perry lost his life.

The record shows that the plaintiff lived on a highway, about twelve miles from Martin. The defendant had employees who looked after repairing lines. They went from the light plants to the scene of trouble in automobiles, and they could have reached the place of trouble from Martin in about twenty minutes.

J. W. Burton, an employee and engineer for the defendant, testified that Charlie Davison informed Burton when Burton came on to work at 6 A. M., that there was trouble on the line. Burton, thereupon, called for one Pauley, an employee of the defendant and known as a lineman. Burton informed Pauley that there was trouble

on the line, but he thought the trouble was at Gleason.. Pauley, after receiving the information, went back home to get his breakfast, and had Pauley acted promptly upon his receiving information that there was trouble at Gleason, he would have passed the place where the accident happened on his way to Gleason.

We are of the opinion, under the facts as established by the record, that the trial Judge properly submitted the issue, whether or not the defendant had been guilty of negligence, to the jury which he did in a charge that was satisfactory to both parties.

"A company which, for purposes of gain, creates or carries a deadly current, must take care of it, and if it gets away because the wires are out of order, and enters a residence and kills a customer without any fault on his part, negligence is presumed, and the company is bound to exculpate itself." Memphis Cons. Gas, etc., Co. v. Letson, 135 Fed., 969, 972, 68 C. C. A., 453 (Certiorari denied 197 U. S., 623). "Now this rule applies to electric companies in the control and mannagement of their lines and apparatus, for the further reason that they have almost exclusive knowledge of the facts relative thereto. The plaintiff ordinarily has not the power or opportunity to test these lines and apparatus; and it is reasonable that the party having the power and opportunity should be required to give an explanation of the accident, and to prove that it did not occur through a lack of care on its part." Southwestern Tel., etc., Co. v. Bruce, 89 Ark., 581, 588, 117 S. W., 564.

The doctrine of res ipsa loquitur finds frequent application in electrical cases where the circumstances of the accident are often such as to create a presumption or inference of negligence sufficient to carry the burden resting primarily upon plaintiff and often said to cast on defendant the burden of meeting or overcoming it by evidence, but accurately speaking, it does not operate to shift the burden of proof. The facts that defendant conducts electricity to a certain place; that electricity so employed may escape in such a way as to produce an injury; and that an injury from electricity is actually occasioned in a place where the injured party has a right to be are usually held to constitute a prima facie case of negligence. The fact that wires carrying a dangerous current of electricity have broken or become detached from their poles in the street or highway and caused injury is generally held to raise a presumption of negligence." 20 C. J., 380, Sec. 63.

"It is the duty of a company using electricity in a public service to make the damage to property therefrom as little as possible by using the best means reasonably within its power." 20 C. J., 363.

The defendant relies upon the act of God as the cause for its transmission line being broken. The act of God would have excused the defendant in this case had it not received notice of its

line being broken, and had it not had time to repair the line after receiving the notice. But the defendant having received a notice that lightning had struck its line, and having been notified of the place, whether it acted with due diligence in repairing the line and defendant having avoided the death of this young boy, or failing to cut off the current, were questions of fact for the jury, and the jury having decided this issue against the defendant's contention, we find evidence sustaining plaintiff's insistence, that the defendant was guilty of negligence in not repairing its line and in not cutting off the current.

In the case of Osborne v. Tennessee Electric Power Co., 158 Tenn., 278, 12 S. W. (2d), 947.

In the Osborne case, our Supreme Court speaking through Mr. Justice McKinney, announced the following:

"When an electric power company, maintaining wires carrying strong and powerful currents is reliably informed of the location of a conflagration of a serious nature, reaching its highly charged wires, it would be the duty of the servant in charge to cut off the current, and if he fails or refuses to do so he would be guilty of negligence which would be imputed to the master. Citing: Madison v. Thomas, 130 Ga., 153; Lexington Utilities Co. v. Parker, 166 Ky., 81; Lutolf v. United Electric Light Co., 184 Mass., 53.

Our Supreme Court quoted from all these cases the principal or controlling facts as follows:

In the Massachusetts case the third syllabus states the case and the conclusions of the court in this language:

"In an action against a corporation operating an electric light plant for causing the death of the plaintiff's intestate, there was evidence that nearly an hour before the plaintiff's intestate was killed by an electric shock received near a pole of the defendant, a servant of the defendant at the power house had received messages by telephone that the pole was on fire and that a wire was down there, and instead of causing the current to be shut off, which would have prevented the fatality, ordered an inspector to go to the place, and that the inspector might have arrived in from five to eight minutes, but that more than half an hour elapsed before the accident and the inspector did not arrive until after it had occurred. Held, that the jury properly could find gross negligence on the part of the servant at the power house in not ordering the current to be turned off and also gross negligence on the part of the inspector in not arriving at the place of the accident within a reasonable time."

In the Georgia case a workman, connected with the defendant, had a merchant to telephone the plant that one of its wires was down. The court, in its opinion, said:

"If the superintendent of the electric light plant received notice that the wire was down, and the electric current was then on, he should have instantly turned the current off and kept it off until, after due investigation, the report was found to be untrue, or if found to be true, until proper precautions were taken to prevent danger to persons or property from the fallen wire."

In the Kentucky case the defendant was given the same character of notice that was given in the instant case; that is, outside parties telephoned that a wire was down, and the court held that the failure of the defendant to cut off the current within twenty minutes after receiving the notice, was the proximate cause of the accident.

The first insistence of the defendant is overruled. Now as to contributory negligence. We have a seventeen year old, barefooted boy awakened from his sleep by sparks being emitted from the defendant's electric wires. He saw a great ball of fire resting on defendant's electric light pole, between 4 and 5 o'clock A. M. This fire was in the cornfield that this boy and his older brother, Mr. Osborne, and the boy's father had cultivated. It appeared that much of the cornfield had been burned, so the witness states. About 7 o'clock Osborne and the two Perry boys together with a neighbor, Bradberry, went into the corn field to see how badly the corn was damaged from the fire. In the early hours of the morning they heard a great roaring sound like an aeroplane flying overhead; the roaring had ceased, no sparks were being emitted, the wire that had fallen to the ground had burned into in two places, about 500 feet apart. The deceased and his three companions; two of them being more then fifty years of age, approached the defendant's electric line cautiously and by coming near the electric line poles they discovered what is termed a path about 3 feet wide, and about 500 feet long had burned between the rows of corn. Osborne and the two Perry boys were interested in their corn crop. They had a right to go and make the investigation.

Osborne testified that he had heard or understood that the power had been cut off. The wire appeared to be harmless, it had burned in two and was hanging down about three feet from the ground, and hanging from the cross-bar parallel with the pole and out 18 or 20 inches from the pole. There is nothing to indicate that this young boy was heedless or reckless. There is nothing to show that the deceased knew that he was exposed to more danger, by being barfoot, or that he knew that the ground being wet from the rain made it more dangerous.

"Knowledge of danger is an important factor in determining the question of contributory negligence. A higher degree of care is required from one with knowledge of danger to amount to ordinary care than would be required from one without such knowledge. But

an ordinary person is held to know the danger attending contact with electric wires, and if he heedlessly brings himself in contact with such wire, and is injured in consequence his contributory negligence will prevent recovery. The mere fact that a dangerous agency is used raises no presumption that the public know enough of its nature to avoid the danger which may arise from its use. It cannot be imputed to plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant. 20 C. J., 375-376.

"Contributory negligence cannot be presumed from the mere fact that one came in contact with an electric wire." Western Union Tel. Co. v. Jones, 190 Ala., 70, 66 So., 691.

"The right of plaintiff to recover for the death of her husband from coming in contact with a wire depended on his conduct at the time of his death, in view of his knowledge, or lack of knowledge, of the condition of the wires." Southern Bell Tel. Co. v. Ellis, 16 Ga. A., 864, 87 S. E., 766.

"Ordinarily a person cannot be presumed to know that moisture is an agency which destroys the insulation of a wire." Giraudi v. Electric Impr. Co., 107 Cal., 120, 40 Pac., 108, 28 L. R. A., 596.

"The general rules as to the sufficiency of evidence to go to the jury apply in electrical cases to the determination of the question of contributory negligence, and whether such negligence was the proximate cause of the injury. If reasonable men might honestly differ on the question, the court will not hold plaintiff guilty of contributory negligence as a matter of law; the question is one for the jury. But where the facts are clear and undisputed and no other inference than that of negligence can be drawn, the court need not submit the question to the jury, but may itself make the inference. The fact that the person injured unnecessarily touched an electric wire was not negligence per se." 20 C. J., 392.

20 C. J., 392-395, cites numerous cases from various jurisdictions where the evidence was held to present a question for the jury. In some of these many cases we find that it was a question for the jury whether the plaintiff or his intestate touched or grasped a guy wire. "Getting close to burning pole on account of curiosity." Farris v. Lawrence County Water Co., Mo. App., 198 S. W., 449. "Stepping on iron plate upon which a high-powered electric wire had fallen, after warning." Smith v. Harwood Electric Co., 255 Pa., 165, 99 Atl., 473.

"Boy eleven and one-half years old killed by electric shock by coming in contact with a broken electric light wire." State v. Crisfield Ice Co., 118 Md., 521, 85 Atl., 615.

"Boy between sixteen and seventeen years of age attempting to move a live electric wire which was causing trouble." Bice v. Wheeling Electric Co., 62 W. Va., 685, 59 S. E., 626.

"Boy twelve years old who, on a dare, touched a live electric wire." Owensboro v. York, 117 Ky., 294, 77 S. W., 1130.

"Boy of seventeen who knew that a guy wire of an electric light post carried an electric current voluntarily laying his hands on it after being told to watch out." South Omaha Water Works Co. v. Vocasek, 62 Neb., 710, 87 N. W., 536.

Taking into consideration the age of the deceased, that he accompanied his older brother and two elderly men to the scene of the accident, that he had noticed a great blaze in the cornfield, being interested in ascertaining the damages to his corn crop and going to the place of the accident about two or three hours after he had seen the fire; the fire and the hissing noise had ceased, he walked to within two feet of a damaged pole, he saw Mr. Osborne kicking the disconnected wire without receiving any injury to Osborne. And taking all the facts and circumstances into consideration, we are of the opinion that whether or not the deceased was guilty of contributory negligence was a proper question for the jury.

"Whether or not a person whose duty or business does not require him to handle electric wires is guilty of contributory negligence in intentionally touching or handling them depends largely upon the age of the person, his knowledge of the danger, and the circumstances which induce him to undertake the risk." 9 R. C. L., 1202-1203.

It results that the second proposition of the defendant is overruled. All the assignments of error are overruled. The judgment of the lower court is affirmed. The plaintiff will recover of the defendant the amount of the judgment rendered in the lower court, with interest thereon from the date of its rendition, and all the costs of the cause, for which execution will issue. The defendant and its surety on appeal bond will pay the cost of the appeal. Execution will issue accordingly.

Heiskell and Senter, JJ., concur.