STATE *ex rel.* JACOB F. BENNETT

*v.*

EDGAR B. SIMS, *Auditor*

(No. 10036)

Submitted February 24, 1948. Decided March 16, 1948.

Riley, President, and Kenna, Judge, dissenting.

H. D. Rollins and Edwin O. Thornhill, for petitioner.

Ira J. Partlow, Attorney General, and Eston B. Stephenson, Assistant Attorney General, for respondent.

Fox, JUDGE:

This is a proceeding under the original jurisdiction of this Court, in which Jacob F. Bennett seeks a peremptory writ of mandamus against Edgar B. Sims, Auditor of the State of West Virginia, to compel him to issue his warrant on the State Treasurer, in favor of the relator, for the sum of $624.00, and for the sum of $52.00 for each month of the year 1948, all authorized by Chapter 25, Acts of the Legislature 1947. Said chapter, so far as it affects relator's claim reads as follows:

> "The Legislature has considered the findings of fact and recommendations reported to it by the court of claims concerning various claims against the state and the agencies thereof, and in respect to each of the following claims the Legislature adopts those findings of fact as its own, and hereby declares it to be the moral obligation of the state to pay each such claim in the amount specified below, and directs the auditor to issue warrants for the payment thereof out of any funds appropriated and available for the purpose.
>
> (a)   Claims versus State Road Commission
> > (1)   Bennett, Jacob F._____$1,560.00
> > (To be paid in monthly installments of $52.00 each from 1-1-47 to 6-30-49)"

The action of the Legislature in appropriating money for this claim is based on injuries sustained by the relator on March 20, 1934, while in the employ of the State Road Commission, in Nicholas County, when, in the course of his employment, he was handling dynamite by placing it in an excavation or hole. For some reason, not known, the dynamite exploded, causing serious and permanent injuries to the relator. Beginning with the 1935 session of the Legislature, appropriations of money for the relief and aid of the relator have been made from time to time; and, aside from hospital expenses, at the rate of $52.00, per month, extending to December 31, 1946. The appropriations prior to the establishment of the Court of Claims were made by special acts of the Legislature, and those after that date upon approval of awards of the said Court

of Claims. These matters, incorporated herein by way of information, appear from relator's petition herein, and from the reports of the State Court of Claims, Volume 2, Page 108, made a part of the record by stipulation of counsel. Payments made to December 31, 1946, aggregate the sum of $8,499.28. These payments were made as they accrued, under the appropriation therefor; but when the Auditor was requested to issue his warrant on the treasurer for sums accrued under the Act of 1947, quoted above, he refused to do so, on the general ground that the appropriation amounted to the appropriation and use of public funds for a purely private purpose, and for that reason was null and void.

If the appropriation now in question was made for such private purpose, it had no validity, as we have heretofore held. *Woodall* v. *Darst,* 71 W. Va. 350, 80 S. E. 367, and *State ex rel. Adkins* v. *Sims, Auditor,* 130 W. Va. 645, 46 S. E. (2d) 81. In passing, it should be said that payments heretofore approved by the State Auditor, on appropriations of a nature similar to that now being considered, cannot be allowed to influence our judgment on the judicial and constitutional questions now raised by the refusal of the said Auditor to issue his warrant for the accrued portion of the 1947 appropriation. The question of legislative power to make the appropriation is before us, and we must decide it on its merits, without regard to past events.

The facts relating to the explosion, from which relator's injuries resulted, can best be stated from the relator's petition herein, and from the opinion of the Court of Claims, filed on February 10, 1943, when an allowance of $1,248.00 was made. In his petition the relator represents:

"Your petitioner further represents that at the time of the accident which resulted in his injuries, he and another employee of the said State Road Commission by the name of Walter Humphries were loading a hole with dynamite; that the said hole was partially filled with water and certainly was not what is generally known as a

'hot hole'; that there was no fire about the hole at the time; that he did not, to his knowledge put anything in the hole which could have ignited the dynamite or caused the same to explode; that the dynamite was furnished him by his superiors who ordered him to place the same in said hole; that the said dynamite exploded without warning; and that he does not know the cause of the explosion and the only way he can account for same is that the last stick dropped in the hole must have had a cap in it placed there through negligence of his superiors."

The Court of Claims in its opinion of February 10, 1943, states that relator's injuries resulted from the following:

"Claimant, Jacob F. Bennett, was permanently injured by a dynamite explosion while working for the state road commission in Nicholas county, West Virginia, on March 20, 1934. A hole fourteen feet deep had been drilled on the day before the accident. The claimant was assisting one Walter Humphries in loading the hole with dynamite. They began loading about two o'clock in the afternoon, and had placed about fifty sticks of dynamite in the hole. The hole was about half full of water and from all the evidence it would appear that it was not a hot hole. Neither does it appear that there could have been a live spark. The explosion went off without warning, and the only conclusion that can be drawn from the evidence is that the last stick of dynamite dropped in the hole happened to have a cap in it. From the evidence it appears that the claimant was using a mixed case of dynamite. They were using 'forty' dynamite, and while loading the particular hole claimant found a 'sixty' stick of dynamite and laid it on the bank above the hole. A battery was used to set off the blast. It would appear that claimant had had considerable experience in handling dynamite and that he was not in any way at fault."

These statements are our only guide in determining how the accident occurred, and they give us no solid ground on which to work. They only speculate, indulge in conjecture, and express opinions. They could do nothing else, because no one pretends to know what caused

the explosion. However the claimant, after the refusal of the State Auditor to recognize the legislative appropriation, and to issue his warrant to him for the accrued portion thereof, instituted this proceeding in mandamus and we awarded a rule requiring the Auditor to appear and show cause why his warrant should not issue as prayed for in relator's petition.

The very troublesome question of the moral duty or obligation of the State to compensate persons for injuries resulting from the exercise of governmental powers, arises out of the provisions of Section 35, Article VI of our State Constitution which provides:

> The State of West Virginia shall never be made defendant in any court of law or equity, except that the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.";

and the provisions of Section 6, Article X of the same constitution, reading as follows:

> "The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; nor shall the State ever hereafter become a joint owner, or stockholder. in any company or association in this State or elsewhere, formed for any purpose whatever."

But, early in the history of this State, an appropriation by the Legislature to pay what was considered a just obligation of the State, "predicated upon simple justice and right", was approved by this Court. *Slack* v. *Jacobs,* 8 W. Va. 612. No subsequent decision of this Court, however, has accepted that broad statement as a basis for a moral obligation, as subsequent decisions attest. An appropriation to pay money to a member of the National Guard, injured in the course of his duty as such, was approved in *Woodall* v. *Darst, supra,* and it was held: "the

Legislature has power to provide for compensation to members of the National Guard, who may be injured while performing any duty, lawfully ordered by their superior officers; and such a provision by general statute creates a moral obligation on the state to a soldier who enlists, and is afterwards injured while performing a lawfully ordered duty, and who is not at fault." In the same case it was held that, whether or not an appropriation is for public or for private purpose, is a judicial question; and that if it does not clearly appear that the appropriation is for a purely private purpose, the Court could not so decide, and that any doubt should be resolved in favor of the legislative act of appropriation. In *Glover* v. *Sims*, 121 W. Va. 407, 3 S. E. (2d) 612, an appropriation to pay the indebtedness of the Athletic Department of the State University for supplies purchased and used by that department, was upheld. In *State ex rel. Davis Trust Co.* v. *Sims, Auditor*, 130 W. Va. 623, 46 S. E. (2d) 90, an appropriation to pay a claim arising out of rape and murder by an escaped convict, of previously known vicious tendencies, was upheld on the basis of the particular circumstances of that case. This Court has twice decided questions arising on claims based on the death of persons allegedly resulting from the failure of the State Road Commission to place guard rails along the highway, at particular points, and to paint a center line on the highway at that point. *State ex rel. Adkins* v. *Sims*, 127 W. Va. 786, 34 S. E. (2d) 585, and *State ex rel. Adkins* v. *Sims*, heard along with five other cases of like nature, 130 W. Va. 645, 46 S. E. (2d) 81. In the case first cited, payment of the legislative appropriation was not ordered for the reason that "in order to validate a legislative appropriation of public money for private use it must affirmatively appear that the Legislature in making the appropriation has found that it was necessary in order to discharge a moral obligation of the State". Subsequent to that opinion, the Legislature made a specific finding of a moral obligation, on the part of the State, to pay the six claims based on the one accident; and in the second of the cases last above cited, based upon

such subsequent legislative declaration, payment of the claims was, in effect, denied on their merits. In that case, in passing on the question of the legislative power to determine whether, in a given case, a moral obligation did or did not arise, we said: "Whether an appropriation is for a public, or a private purpose, depends upon whether it is based upon a moral obligation of the State; whether such moral obligation exists is a judicial question; and a legislative declaration, declaring that such moral obligation exists, while entitled to respect, is not binding on this Court." We held that in those cases a moral obligation to pay the claims did not exist.

In *State ex rel. Cashman* v. *Sims, Auditor*, 130 W. Va. 430, 43 S. E. (2d) 805, in attempting to lay down a general rule as to the foundation on which a moral obligation of the State to compensate employees of the State, or other persons, for injuries resulting from alleged negligence of State employees, or on other grounds, which could be recognized by the Legislature, we held: "To constitute a valid declaration by the Legislature of the existence of a moral obligation of the State for the discharge of which there may be an appropriation of public funds in the interest of public welfare, it is necessary, as a general rule, that there be an obligation or a duty by prior statute created or imposed upon the State to compensate a person for injury or damage sustained by him by reason of its violation by the State or any of its agencies, or to compensate him for injury, damage or loss incurred by him in or by his performance of any act authorized or required by such statute; or an obligation or a duty, legal or equitable, not imposed by statute, but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons."

This statement of the general rule has been approved and followed in the *Davis Trust Company* and *Adkins* cases, and is now approved and reaffirmed.

Counsel for relator, in his brief, bases his claim to the writ prayed for: (1) on the alleged negligence of the

State Road Commission in not taking due care to avoid danger reasonably to be apprehended from the handling of explosives; and (2) the failure of the commission to furnish to the relator a safe place to work; citing 22 Am. Jur., Sections 35 and 37, under the title of "Explosions and Explosives". But what was there about the "place to work" to make it apparent or even probable that it was unsafe? And what was the lack of care in the handling of a known dangerous material. The Court of Claims opinion says that the relator had considerable experience in the handling of dynamite, and, therefore, he must have known of the danger to be guarded against in its use. The record does not show who placed the last stick of dynamite in the hole, immediately before the explosion, whether his fellow worker Humphries, or the relator himself. Nor is it shown who, other than relator and his fellow employee, Humphries, was in control of, or charged with the responsibility for the dynamite used on that occasion. There is, in our opinion, no direct showing of negligence on the part of the Road Commission, or on the part of any other person, which, in law, would afford grounds for a recovery by the relator were this an action at law between private litigants.

But may an inference of negligence, on the part of the State Road Commission, be predicated on the situation existing at the time of the explosion. Is this a case calling for the application of the rule of *res ipsa loquitur*? Does the evidence, by inference, condemn the State Road Commission as guilty of negligence?

A very clear statement of the rule of *res ipsa loquitur* appears in 38 Am. Jur., 989. It is there stated: "While the mere fact of an injury will not give rise to a presumption of negligence on the part of anyone, under the doctrine of res ipsa loquitur, an expression which means, literally, the transaction speaks for itself, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. The conclusion to be drawn from the cases as to what constitutes the

rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care."

Applying the rule to explosives, we find in 22 Am. Jur. 212 the following: "As in cases of negligent injuries generally, the mere fact of the happening of an explosion furnishes no basis of a presumption of negligence. However, another rule, which is fully treated elsewhere, is frequently applicable to explosion cases. The nature, cause, and circumstances of an injury may furnish occasion for application of the doctrine of res ipsa loquitur. Thus, whenever the thing that exploded is shown to have been under the control and management of the defendant, and the explosion is such a one as, in the ordinary course of events, would not happen if due care is exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery, unless the defendant gives an explanation of the occurrence tending to show that the injury was not due to his want of care."

It will be observed that a basic requirement, precedent to the application of the rule, is that the instrumentality, out of which an injury occurs, must be within the control of the person whose duty it was to keep the same in repair, and in a safe condition for use. The absence of any showing of control over the dynamite, other than by the relator and Humphries in using it on the day of the explosion, would seem to raise a serious question as to the application of the rule to the case at bar.

We have cited and quoted from authorities stating the general rule, governing application of the rule of *res ipsa loquitur*, which, we must always bear in mind, is only a rule of evidence. Many decisions of this Court discuss

and apply, or refuse to apply, the rule. In *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661, 28 S. E. 733, involving an electric wire, it was held: "There must be reasonable evidence of negligence. But where a thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." In the opinion in that case, prepared by Judge Brannon, the reason for the rule is discussed at length. Getting closer to the situation presented on this hearing, a boiler explosion, we find that in *Veith* v. *Salt Co.,* 51 W. Va. 96, 41 S. E. 187, the following: "A presumption of negligence does not arise from the mere fact of the explosion of a steam boiler used by one engaged in lawful business. Negligence on his part must be shown."; and in the body of the opinion the rule of *res ipsa loquitur* is discussed. In *Dickinson* v. *Stuart Colliery Co.,* 71 W. Va. 325, 76 S. E. 654, it was held: "The fact of an explosion in a coal mine is not *prima facie* evidence of actionable negligence on the part of the owner or operator of the mine. The rule *res ipsa loquitur* does not apply."; and this statement is discussed in the body of the opinion. See also *Bice* v. *Wheeling Electric Company,* 62 W. Va. 685, 59 S. E. 626, and *Jones* v. *Riverside Bridge Co.,* 70 W. Va. 374, 73 S. E. 942. In *Jankey* v. *Hope Natural Gas Co.,* 98 W. Va. 412, 127 S. E. 199, a recovery was permitted on the strength of the application of the rule, but the cases cited above were discussed and followed.

Mature consideration of the statements on the general rule quoted above, and the decisions of this Court on cases closely approximating the case at bar, leads us to the conclusion that the relator has not established such negligence on the part of the Road Commission, as would establish his right to recover damages for his injuries, if, on the same state of facts, this were an action between private litigants. There is nothing shown, in the case before us, that takes it out of the general rule stated in

the *Cashman* case. Therefore, following that rule, we hold that the Legislature was not warranted, under the Constitution, in making its declaration of a moral obligation, on the part of the State, to pay relator damages resulting from his injury; that no such obligation has ever existed and does not now exist; and that the legislative appropriation is void.

Counsel for the State contends that even if the State Road Commission, through its agents and employees, has been guilty of negligence, proximately contributing to relator's injuries, there could be no recovery against the State, even if its immunity from suit did not exist, because they say: (1) the rule or doctrine of *respondeat superior* may not be invoked against the State; (2) there can be no recovery against the State, or its governmental agencies, for the negligence of its agents and employees while engaged in the performance of governmental duties; and (3) that the State is entitled to rely on the common law defenses of assumption of risk, negligence of fellow servants, and contributory negligence of a plaintiff, as matters of defense to an action, citing many cases in support of these propositions. There being no way by which the immunity of the State can be waived, under our existing Constitutional provisions, it seems to us that any discussion of these points would be purely academic. But if it were otherwise, our holding in *State ex rel. Davis Trust Company* v. *Sims, Auditor, supra,* seems to exclude consideration of these points, on the question of determining the existence of a moral obligation on the part of the State, such as is here contended for. In that case, in the body of the opinion, it was stated: "The defendant vigorously asserts that as the State is not liable for the tortious acts of its officers, agents and employees, unless such liability is assumed by or imposed upon it by valid statute, no moral obligation of the State arising from such acts is shown to exist in favor of the petitioner. *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. (2d) 805; *Hayes* v. *Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. (2d) 726, 156 A. L. R. 702. That contention is without merit. The general principle, recognized by this

Court, that in the absence of a valid statute, or a constitutional provision assuming or imposing liability upon it, a State is not liable for the tortious acts of its officers, agents and employees, relates to legal liability, and denies the existence of any such liability as a result of the wrongful acts of its representatives. It does not operate to prevent the recognition of a moral obligation of the State arising .from or predicated upon the misconduct of its officers, agents and employees, such as would be judicially held to constitute a breach of a legal duty in cases between private persons."

In view of the rule which this Court has established in respect to claims of this character, the peremptory writ of mandamus prayed for is denied.

*Writ denied.* ·

RILEY, PRESIDENT, dissenting:

I can not agree with the majority opinion for the reason that the Court has evidently ignored the factual finding of the Court of Claims and the evidence upon which that finding was based. The record discloses, and the Court of Claims so found, that the hole in which the last stick of dynamite which exploded was placed was half full of water, and that it was not a "hot hole". The record does not disclose the presence of a live spark or fire of any kind at the time of the explosion. By process of elimination the Court of Claims found that the last stick of dynamite dropped in the hole happened to have a cap in it. This necessarily created an unusual and dangerous situation, which claimant, although he had had considerable experience in the handling of dynamite, could not reasonably have anticipated. Under the theory that an employer is under a duty to furnish an employee with reasonable conditions of work, the State would be liable in an action of law for negligence under the facts of the instant case, were it not for the State's constitutional immunity. It necessarily follows that the State has the moral obligation to pay the claim and that being so this Court should grant a writ of mandamus.

KENNA, JUDGE, dissenting:

The majority opinion contains this statement:

> "But, early in the history of this State, an appropriation by the Legislature to pay what was considered a just obligation of the State, 'predicated upon simple justice and right', was approved by this Court. *Slack* v. *Jacobs,* 8 W. Va. 612. No subsequent decision of this Court, however, has accepted that broad statement as a basis for a moral obligation, as subsequent decisions attest. * * *"

That statement, if accurate, should require the overruling of the *Slack* case. That is not attempted. But the statement is far from accurate. In the case of *State* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 814, 172 A. L. R. 1389, this Court held:

> "Other situations may arise in which a moral obligation may properly be found to exist against the State, involving a condition which would give rise to an obligation predicated upon simple right and justice such as a fair and just man should assume in his own affairs even though not compelled by law to do so, as indicated by the statements already referred to in the opinions of this Court in the *Slack* and *Woodall* cases. Such situations, however, in which a moral obligation of the State might properly be recognized, should be considered as an exception to the general rule just stated; and in each instance the determination of that question depends upon the facts and the circumstances of each particular case."

In the case just cited, popularly referred to as the *"Cashman case"*, I dissented, and undertook to point out what to my mind was the confusing error made by the Court in establishing as an exception to the general rule what I then regarded, and now regard, as the controlling principle in arriving at what is and what is not a moral obligation of the State, and further, in not applying that principle to the circumstances before the Court in the *Cashman* case. It is my fear that the Court's present discussion will further complicate what I regarded at the

time of the *Cashman* decision as an easily avoidable confusion.

This dissent is not written in persistent disagreement with the Court's opinion in the *Cashman* case. That case has been decided. I thought it had enunciated the law concerning a moral obligation of the State in this jurisdiction. This is a comment upon what I regard as a departure from the controlling principle; though there spoken of as an exception, pronounced in the *Cashman* case decided July 11, 1947. The annotation in 172 A. L. R. 1407 discusses cases which without exception sustain this view.