JOHN HOLIMAN, *Administrator of the Estate of* JACOB R. WILEY, *Deceased*

*v.*

THE BALTIMORE AND OHIO RAILROAD COMPANY, *a Corporation,* AND WOODY H. MULLEN

(No. 10512)

Submitted January 27, 1953. Decided March 10, 1953.

*Belknap & Jones, G. C. Belknap* and *Jeniver J. Jones, Furbee & Hardesty, Russell L. Furbee* and *C. Howard Hardesty, Jr.,* for defendant in error.

*John H. Fox, Robert B. Stotler* and *Kendall H. Keeney,* for plaintiffs in error.

LOVINS, JUDGE:

This action was instituted in the Circuit Court of Braxton County, West Virginia, by John Holiman, Administrator of the Estate of Jacob R. Wiley, against the Baltimore and Ohio Railroad Company, a corporation, and Woody H. Mullen.

The purpose of the action is to recover for the death of the plaintiff's decedent, caused by a collision between a motor vehicle and a locomotive at a railway crossing. The jury rendered a verdict against the defendants in the sum of $10,000.00. The trial court, after overruling a motion to set aside the verdict, entered judgment on the verdict. This court granted a writ of error.

The accident in which Jacob R. Wiley lost his life, occurred at a point where a public road crosses the tracks of the corporate defendant at a grade situate between the villages of Flatwoods and Heaters. The public road runs approximately parallel with the railroad track for some distance on both sides of the crossing and intersects the railroad track at an angle of about 15 degrees. The public road is almost straight in both directions from the crossing for distances sufficient for the approach of the motor vehicle and the train to have been seen by the principal actors in this tragic occurrence. In the direction of the

Village of Heaters from the crossing, the public road is elevated above the level of the railroad tracks.

There is no obstruction to the view of the operator of a vehicle approaching the crossing from the Village of Flatwoods for a distance of about 850 feet. But there is some obstruction to the view of a train approaching from the direction of Heaters.

In approaching the crossing from the direction of the Village of Flatwoods, there is a sign by the side of the pavement, consisting of a circle enclosing two lines crossing at right angles and the letters "R R". This sign is located 448 feet from the center line of the crossing. A standard railroad crossing sign is located on the same side of the road, about 123 feet from the crossing.

The railroad right of way is 60 feet wide, but the showing is not definite whether the tracks of the corporate defendant are in the center of the right of way. The obstruction to the view consists of shrubbery, weeds and a tree. It seems that the employees of the corporate defendant treated the shrubbery, weeds and tree as being on the lands of an adjoining land owner and a fence there located, as being the line between the railroad right of way and the land of such owner.

About two and one-half months before the accident occurred, the weeds were mowed and the shrubbery cut on the railroad right of way between the fence and the railroad tracks, thus clearing the land assumed to be the right of way of the corporate defendant. Plaintiff does not attempt to show that the weeds, shrubbery and tree are in fact located on the right of way.

About 6:55 P.M. on the 27th day of October, 1950, a train was being operated over the railroad tracks from the direction of the Village of Heaters and in the direction of the Village of Flatwoods. The train consisted of 58 empty cars, two locomotives and a caboose. The lead engine, operated by defendant, Woody H. Mullen, was

equipped with a 250 watt electric headlight, which was burning before, at the time of, and after the collision.

The members of the train crew testified that a crossing signal was sounded by the whistle at approximately 1500 feet away from the crossing and that the same signal was repeated and the whistle was blowing at about the time the train entered on the crossing. Some members of the train crew also testified that the bell on the locomotive was rung at the time the whistle was blown. A traveler along the road corroborated the members of the train crew as to the blowing of the whistle and the ringing of the bell. Another witness, who lived near the tracks, testified that he heard the whistle of the train for the crossing, that it continued to blow until the crash, but that he did not hear the ringing of the bell.

Two witnesses for the plaintiff, who lived near the railroad tracks, testified they did not hear the bell rung or the whistle blown.

It was shown that the brakes on the train had been tested at Grafton, West Virginia, referred to as a terminal test, and also at another point enroute from Grafton.

The motor vehicle in which the decedent was riding belonged to Charles Richardson who had employed John R. Wiley, the son of Jacob R. Wiley, to use it in hauling cattle from the town of Gassaway, West Virginia, to the town of Bridgeport, West Virginia. The deceased Jacob R. Wiley was also employed by the same person to go along and assist in loading and unloading the cattle. The decedent and his son had used the crossing for transporting livestock on the day of, and prior to the time the accident occurred.

Just before the accident, the decedent and his son, with a load of approximately 15 head of livestock in the bed of the motor truck, approached the crossing traveling at an approximate speed of 35 miles per hour until they reached the point about 200 feet from the crossing. The witness who testified as to the speed of the truck did not

observe the vehicle after it had reached a point about 200 feet away from the crossing. The same witness, on the morning after the accident, examined the pavement and testified that he saw no skid marks on the pavement.

The train which collided with the motor truck was being operated, according to the testimony of most, if not all of the train crew, at a rate of 18 to 20 miles per hour, though a witness for the plaintiff who lived beside the railroad right of way, testified that he glanced out of a window of his residence and that in his opinion the train was traveling at a speed of about 35 miles per hour.

The individual defendant testified that he first saw the motor truck about 800 feet before he reached the crossing, but thereafter he was prevented from seeing the vehicle because of a tree or possibly shrubbery, until he was near the crossing; that when he saw the motor vehicle did not intend to stop, he shut off the throttle of the locomotive, applied the air in emergency, dropped sand on the rail and moved down behind the firebox to prevent injury to himself.

The train collided with the truck, killing all of the livestock and scattering their carcasses along the right of way, one of the animals being approximately 125 feet from the crossing in the direction in which the train was going; and bodies of the other animals were scattered along the right of way at various distances from the crossing. The cab of the motor truck was fastened to the front of the leading locomotive. The bodies of Jacob R. Wiley and John R. Wiley, his son, were found in the cab, John R. Wiley being on the driver's side with his hand on the steering wheel. The train was stopped approximately 445 feet from the crossing.

The plaintiff alleges that the defendants were guilty of four specific acts of negligence, (a) that the corporate defendant and its servants and employees did not blow the whistle and ring the bell as required by Code, 31-2-8, (b) that they failed to keep a proper lookout, (c) that they failed to operate the train over such crossing at a

reasonable rate of speed, and (d) that the defendants failed to keep the crossing and the approach thereto along the right of way free from the growth of brush and other objects which would impair the vision of travelers on the highway.

The controlling question presented by the record herein is: Were the defendants, or either of them, guilty of primary negligence proximately causing the death of plaintiff's decedent? If not, the judgment of the trial court must be reversed.

Prior to the discussion of the specific acts of negligence charged in the declaration, we advert to certain general principles which we deem applicable to this case.

In actions founded upon negligence, the plaintiff must show affirmatively that the defendant, acting in its proper person, or by an agent, servant or employee, was guilty of negligence as charged in the declaration and that such negligence proximately caused the injury. *Ice v. County Court*, 77 W. Va. 152, 87 S. E. 75; *Thorn v. Addison Bros.* 119 W. Va. 479, 194 S. E. 771; *Parsons v. Railroad Co.*, 127 W. Va. 619, 34 S. E. 2d 334.

In *Daugherty v. Baltimore & O. R. Co.*, 135 W. Va. 688, 64 S. E. 2d 231, it was held that: "When facts which control upon questions of negligence are not disputed and only one conclusion can be drawn from them by reasonable men, the question of negligence is a question of law for the court." *Cooper v. Motor Co.*, 128 W. Va. 312, 36 S. E. 2d 405. See *Ketterman v. Railroad Co.*, 48 W. Va. 606, 37 S. E. 683; *Barron v. Railroad Co.*, 116 W. Va. 21, 178 S. E. 277; *Linville v. Railroad Co.*, 115 W. Va. 610, 177 S. E. 538; *Wood v. Shrewsbury*, 117 W. Va. 569, 186 S. E. 294; *Daniels v. Railway Co.*, 94 W. Va. 56, 117 S. E. 695.

The act of negligence charged in the declaration that the defendant railroad company failed to sound the whistle and bell as required by Code, 31-2-8, is not sustained by the evidence. The testimony with reference to those statutory warning signals adduced by plaintiff only goes

so far as to establish that the witnesses did not hear the bell rung and the whistle sounded. Such evidence is not in conflict with the testimony of other witnesses who testified that in fact the whistle was blown and the bell rung. *Cavendish* v. *Railway Co.*, 95 W. Va. 490, 121 S. E. 498. There is an exception to the foregoing rule stated in *Carnefix* v. *Railroad Co.*, 73 W. Va. 534, 82 S. E. 219; *Parsons* v. *Railroad Co., supra.* That exception arises because of the equal opportunity of a witness to hear the signals and the existence of special circumstances or events that directed the attention of the witness to the failure to give them. No such circumstances or events are here shown.

The undisputed proof clearly establishes the fact that such signals were given. The trial court instructed the jury that there was no evidence that the defendants failed to give the warning signals. That instruction was right and the action of the court is not challenged by the plaintiff in brief or argument. We dismiss from further consideration the claimed negligence of defendants, predicated upon the alleged failure to give such statutory warning signals.

The alleged negligence of the defendants, in failing to keep a proper lookout, is not sustained by the evidence. In fact, the plaintiff offers no proof showing that the defendants failed to keep a proper lookout, nor can such failure be inferred from the evidence of the defendants, or circumstances established by proof. The evidence and circumstances shown in the record by defendants' evidence, show that they kept a lookout for the motor vehicle and that the engineer on the leading locomotive saw the vehicle but thought it would stop for the crossing. The scene of the accident being in a rural location, the train had the right of way at the crossing. *McClaugherty* v. *Traction Co.*, 123 W. Va. 112, 14 S. E. 2d 432; *Helvey* v. *Power Co.*, 84 W. Va. 16, 99 S. E. 180; *Casto* v. *Transit Co.*, 120 W. Va. 676, 681, 200 S. E. 841.

Timely warning having been given, the train had the superior right to pass over the crossing. *United States*

*Director Gen. of Railroads* v. *Zanzinger* (4 C. C. A.) 269 Fed. 552.

The evidence does not establish the alleged act of negligence of the defendants in failing to keep a proper lookout. Hence, the plaintiff cannot recover on that ground.

The act of negligence, with reference to the excessive speed of the train, is likewise not sustained by the proof. The defendants' witnesses, who gave testimony as to the speed of the train, estimated the speed to be from 18 to 20 miles per hour. The only proof contrary to that is that of the one witness who resided adjacent to, and near the crossing. This witness testified that he glanced out of a window of his residence and that it was his opinion the train was traveling at approximately 35 miles per hour. We think the proof of the speed of the train, offered by the plaintiff, hardly constitutes a scintilla of evidence and creates no conflict with the testimony of defendants' witnesses as to the speed of the train.

The scintilla rule has been abrogated in this jurisdiction. *Ice* v. *County Court, supra.*

The train was crossing an open country and we know of no statute controlling its speed. Therefore, even if the train was traveling at a speed of 35 miles per hour, in the circumstances as disclosed by this record, it was not negligence. *McClaugherty* v. *Traction Co., supra; Morris* v. *Railroad Co.,* 107 W. Va. 97, 147 S. E. 547. Hence the plaintiff fails to establish the allegation that the defendants were negligent in operating the train at an excessive rate of speed.

Whether the tree, shrubbery and weeds growing inside the fence of the adjoining land owner was on the right of way of the corporate defendant or on the land of such owner was not shown by proof. At any rate, the decedent and his son, having passed over the crossing on the same day, they should have been aware of the existence of the tree, shrubbery and weeds. The individual defendant

operating the leading locomotive testified that he saw the approach of the motor truck before the tree and shrubbery cut off his view and that when his view cleared such obstructions, he was so near the crossing that he could not stop the train and prevent the accident. This, to us, clearly presents the principle that the operator of the motor vehicle at a railroad crossing should take steps to preserve his own life, which the plaintiff's decedent evidently failed to do. See *Dernberger* v. *Baltimore & O. R. Co.,* (4 C. C. A.) 243 Fed. 21; *Robinson* v. *Railway Co.,* 90 W. Va. 411, 110 S. E. 870.

In addition to the foregoing, it was the duty of the plaintiff to prove that the corporate defendant allowed trees and shrubbery to grow on its right of way. This, the plaintiff failed to do, and therefore failed to sustain by proof the specific act of negligence relative to the corporate defendant permitting and allowing weeds, shrubbery and trees to grow on its own right of way.

The controlling facts of this case are really not in dispute and only one conclusion may be reached by reasonable men from the facts here shown. Hence, whether the defendants were negligent, became a question of law for the court to decide.

The motion to direct a verdict for the defendants should have been sustained by the trial court and it was error to overrule the same. The court also, after it had overruled the motion for a directed verdict, erroneously refused to give a peremptory instruction to find for the defendants, which was likewise reversible error.

Having in mind what has been said concerning the specific acts of negligence, we deem it unnecessary to discuss the assignments of error relative to giving and refusing instructions tendered by the plaintiff and defendants, and the action of the court in overruling the motion to set aside the verdict and grant a new trial.

The judgment of the Circuit Court of Braxton County is reversed, the verdict of the jury is set aside and a new trial awarded defendants.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*