S. MORRIS MECUM

*v.*

FOOD MACHINERY AND CHEMICAL CORPORATION
*and*
ROBERT H. TAYLOR

*v.*

FOOD MACHINERY AND CHEMICAL CORPORATION

(No. 10913)

Submitted May 6, 1958. Decided June 17, 1958.

628

*Frank T. Litton, Kellum D. Pauley, George W. Stokes,* for plaintiffs in error.

*Jackson, Kelly, Holt & O'Farrell, W. C. Weaver,* for defendant in error.

HAYMOND, PRESIDENT:

This writ of error was awarded by this Court upon the application of the plaintiffs, S. Morris Mecum and Robert H. Taylor, to the judgment of the Circuit Court of Kanawha County rendered May 22, 1957, by which that court denied a writ of error sought by the plaintiffs to the final judgment of the Court of Common Pleas of Kanawha County rendered October 4, 1956, in favor of the defendant, Food Machinery and Chemical Corporation, upon a demurrer to the evidence filed in that court by the defendant.

Separate actions were instituted by the plaintiffs Mecum and Taylor and thirteen other plaintiffs before justices of the peace of Kanawha County, in each of which the plaintiff obtained a judgment against the defendant. The judgment in favor of Mecum was for $150.00, the judgment in favor of Taylor was for $171.36, and the separate judgment in favor of each plaintiff in the other actions, with one exception, was for less than the sum of one hundred dollars. The plaintiffs in all these actions were represented by the same counsel and upon appeals to the

Court of Common Pleas of Kanawha County by the defendant the actions were consolidated and tried together in that court.

At the conclusion of the evidence introduced in behalf of the plaintiffs the trial court overruled a motion by the defendant to strike the evidence and direct a verdict for the defendant. The defendant then filed its demurrer to the evidence, in which the plaintiffs joined. Upon the demurrer to the evidence and at the direction of the court the jury returned a conditional verdict for each of the plaintiffs for a specified amount which each would be entitled to recover if the court should determine the law to be in favor of the plaintiffs and for the defendant if the court should determine the law to be in favor of the defendant. The court sustained the demurrer to the evidence, overruled a motion by the plaintiffs to set aside the verdict and grant them a new trial, entered judgment in favor of the defendant, and assessed costs against the plaintiff in each of the fifteen consolidated actions.

The plaintiffs, Mecum and Taylor, herein sometimes designated as the plaintiffs, seek reversal here of the judgment against each of them, and counsel representing the respective parties stipulated in the trial court that as the same issues are involved in all of the fifteen consolidated actions if there should be a verdict for one of the plaintiffs such verdict should be for each of the other plaintiffs for the amount stated in the conditional verdict and if there should be a verdict against any one of the two plaintiffs such verdict should be against all of the plaintiffs.

The defendant at the time of, prior to, and since, the occurrence of the injuries to the property of the plaintiffs, which they assert were caused by the negligence of the defendant, was engaged in the manufacture of caustic soda in a section or unit of its chemical plant in South Charleston, Kanawha County, West Virginia, and is the only manufacturer of that product in the area in which its plant is located.

In the process of producing caustic soda a quantity of caustic chemical heated to a molten state is transmitted to a drum which is cooled by rotation in water. The substance becomes solidified at the drum and in the form of flakes is dropped from the drum into a breaker and a grinder where the flakes are reduced to smaller particles of different sizes. The caustic soda then goes into collecting hoppers and is finally placed in steel drums. The process of grinding the substance is known as a flaker operation. An air duct attached to the system through which the caustic is transmitted connects with a box in which dust is collected by a blower and a water spray at that point forces the dust particles downward into a sewer. The entire system appears to be completely connected and to constitute a tightly enclosed circuit. The foregoing method of producing caustic soda in the chemical manufacturing industry is a standard and recognized method of production of that article and the machinery used for that purpose was operated by experienced and competent employees of the defendant. It was newly installed, was in use for a period of about one year before a quantity of dust and crystals escaped from the system through the air duct and damaged the property of the plaintiffs, and was designed to minimize or prevent the escape into the air of any particles of caustic soda from the plant.

During the morning of April 8, 1953, each of the fifteen plaintiffs, all of whom were employees of the defendant at various sections of its plant, placed his automobile in the parking lot provided for its employees located approximately 250 to 400 feet west of the caustic soda unit. The unit was in operation and when the plaintiffs returned to their respective automobiles during the afternoon and evening of that day various parts of each automobile were covered with a gray or white substance recognized and identified as caustic soda which could not be removed by washing it from the automobile and which damaged the painted metal surface and destroyed or ruined the paint. Because of the action of the caustic soda it was necessary for each plaintiff to have the metal surface of

his automobile repaired and repainted and the action instituted by each plaintiff was brought to recover the cost of restoring his automobile to the same condition in which it had been before it was damaged by the caustic soda.

The evidence introduced in behalf of the plaintiffs consisted of the testimony of the plaintiff Taylor and two other witnesses who were employees of the defendant. The evidence shows clearly that the caustic soda unit when the automobiles were damaged was under the exclusive control of the defendant and was operated by its employees; that the plaintiffs had nothing to do with its operation; that though the plaintiffs had regularly parked their automobiles in the lot provided for that purpose by the defendant for a long period of time before the damage occurred and for sometime afterwards, caustic soda from the unit had never been deposited upon or damaged any automobile parked in the lot at any time other than on April 8, 1953; that the substance which damaged the automobiles of the plaintiffs was caustic soda emitted by some unknown cause and in some unknown manner from the unit operated by the defendant; and that an unusual stoppage in the grinder caused the accumulation of caustic dust on the inner walls of the blower inside the system and the discharge of dust and crystals through the air duct into the atmosphere which resulted in their deposit upon and the damage to the automobiles of the plaintiffs. The evidence also shows that the escape or discharge of a sufficient quantity of caustic dust and crystals from the plant to cause damage to the automobiles of the plaintiffs was such an occurrence as, in the ordinary operation of the unit in which the caustic soda was manufactured, does not happen if the defendant in control of its operation exercises due care.

The plaintiff Taylor testified that about noon on April 8, 1953, while he was outside the plant, he observed a cloud of caustic dust which came from the direction of the caustic unit; that he was "bitten" by the caustic soda; and

that, because he had handled some liquid caustic and had previously been bitten by caustic soda in the department in which he worked, he recognized the substance as caustic soda.

J. E. Prohovich, the supervisor of the caustic soda manufacturing unit of the plant on April 8, 1953, was produced as a witness in behalf of the plaintiffs. This witness, who was not present when the dust and crystals escaped from the unit, testified on his examination in chief that he made an investigation of the unit on that day and, on April 16, 1953, submitted a written report of his investigation; that by his investigation he learned that caustic dust had escaped from the unit into the air and had gone as far as and beyond the boundary line fences of the plant; that he also learned of the presence of some of the dust inside the building and outside on its roof; that after the dust had escaped the unit was immediately shut down, the equipment was washed and dried, and its normal operation was then resumed; and that caustic is corrosive and would cause damage to paint and metal of an automobile with which it came in contact.

The written report made by Prohovich, which was introduced in evidence, contains the statements, among others, that on April 8, 1953, caustic dust from 28-3 flaker operation apparently escaped into the air and the wind carried it in a northwesterly direction within and beyond the plant boundary fences; that some employees working in the plant area complained of "biting of the skin" and reported it to a man named Canterbury as he returned from lunch shortly before one o'clock in the afternoon; that he also noticed some dust from the blower vent at 28-3 when he arrived there sometime later; that the operators were unaware of this condition until the grinder motor "kicked out" about 1:45 P. M.; that at that time the flakes backed up from the grinder into the breaker at the drum and there was "dusting" within the building; that the "fouling" of the grinder on April 8, 1953, was apparently responsible for the occurrence, as the next two

following shifts were normal; that from all indications an abnormal amount of dust was produced at the grinder, found its way out through the dust box, and was discharged into the atmosphere by the blower; and that the only possible way that diluted caustic solution could have been exhausted through the vent was from blower drainage stoppage by chunks dropped into it or the caking of the caustic dust on the walls of the blower and ducts.

On cross-examination Prohovich testified that the equipment in use was designed to minimize or prevent the escape of caustic into the air; that the operators were instructed to be alert and to use their ability to attempt to prevent any such occurrence; that at the time the dust escaped the normal operating force of employees was present to watch over and take care of the process; that so far as he knew nobody failed to be present or to assume his proper responsibility; that from his investigation he was unable to place the blame or fault upon anyone or to say that anyone failed to do what he was supposed to do or that he neglected his duty or responsibility; that so far as he knew everyone did his best and exercised reasonable care to prevent such occurrence; that the machinery was checked regularly to ascertain if it was or was not in good working condition; that there had been no report to him that there was anything wrong with the machinery or that it was defective in any way or was not operating properly prior to April 8, 1953; that so far as he knew the machinery was free from mechanical or other defects prior to that date; that he did not know of any incident of improper maintenance or operation of the machinery on April 8, 1953; that he had nothing to do with the equipment; that his investigation "consisted of making sure that the equipment is clean."; that he did not know what caused the discharge of the caustic into the air; and that all he knew was that the motor "kicked off."

The plaintiffs assign as error the action of the trial court in sustaining the demurrer of the defendant to the evidence introduced by the plaintiffs and in entering judg-

ment for the defendant upon the conditional verdict of the jury. They insist that the doctrine of res ipsa loquitur applies to the facts of this case as disclosed by the evidence; and that the evidence is sufficient to warrant an inference of negligence on the part of the defendant.

In support of the judgment of the trial court the defendant contends that the plaintiffs have failed to establish negligence upon the part of the defendant; that the doctrine of res ipsa loquitur is not applicable to the facts shown by the evidence; and that even if that doctrine is applicable any inference of negligence is rebutted by the evidence introduced in behalf of the plaintiffs.

The claims of the plaintiffs in the consolidated actions are based upon negligence of the defendant which was the proximate cause of the injury of which the plaintiffs complain; and in order to recover in an action based on negligence the plaintiff must prove that the defendant was guilty of negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains. *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Holiman* v. *Baltimore and Ohio Railroad Company,* 137 W. Va. 874, 74 S. E. 2d 767; *Webb* v. *Sessler,* 135 W. Va. 341, 63 S. E. 2d 65; *Divita* v. *Atlantic Trucking Company,* 129 W. Va. 267, 40 S. E. 2d 324; *Fleming* v. *McMillan,* 125 W. Va. 356, 26 S. E. 2d 8; *Jones* v. *Virginian Railway Company,* 115 W. Va. 665, 177 S. E. 621; *Fleming* v. *Hartrick,* 100 W. Va. 714, 131 S. E. 558; *Massie* v. *Peel Splint Coal Company,* 41 W. Va. 620, 24 S. E. 644.

The plaintiffs, however, rely upon the doctrine of res ipsa loquitur to enable them to recover in these consolidated actions, and insist that the doctrine applies to the facts established by the evidence. The doctrine of res ipsa loquitur is that when a person who is without fault is injured by an instrumentality at the time within the exclusive control of another person and the injury is such as in the ordinary course of events does not occur if the person who has control uses due care, the injury is charged

to the failure of such other person to exercise due care. It is based on the lessons of experience that an injury, in the usual course of every day conduct, does not occur if the person who controls an instrumentality which will likely produce injury exercises care to prevent its occurrence; and it is given practical effect as a part of the judicial function to administer justice between litigants. *Pope* v. *Edward M. Rude Carrier Corporation,* 138 W. Va. 218, 75 S. E. 2d 584; *Ellis* v. *Henderson,* 142 W. Va. 824, 98 S. E. 2d 719; *Wright* v. *Valan,* 130 W. Va. 466, 43 S. E. 2d 364; *Hunker* v. *Warner Brothers Theatres,* 115 W. Va. 641, 177 S. E. 629; *Jankey* v. *Hope Natural Gas Company,* 98 W. Va. 412, 127 S. E. 199; *Jones* v. *Riverside Bridge Company,* 70 W. Va. 374, 73 S. E. 942; *Bice* v. *Wheeling Electrical Company,* 62 W. Va. 685, 59 S. E. 626; *Snyder* v. *Wheeling Electrical Company,* 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922. The doctrine of res ipsa loquitur is a rule of evidence, *Pope* v. *Edward M. Rude Carrier Corporation,* 138 W. Va. 218, 75 S. E. 2d 584; *Redman* v. *Community Hotel Corporation,* 138 W. Va. 456, 76 S. E. 2d 759; *State ex rel. Bennett* v. *Sims,* 131 W. Va. 312, 48 S. E. 2d 13; *Owen* v. *Appalachian Power Company,* 78 W. Va. 596, 89 S. E. 262, which does not dispense with the requirement that negligence must be proved by him who alleges it but only relates to the method of proving such negligence. *Pope* v. *Edward M. Rude Carrier Corporation,* 138 W. Va. 218, 75 S. E. 2d 584; 22 Am. Jur., Explosions and Explosives, Section 95.

Though the mere fact of an injury will not give rise to a presumption of negligence on the part of anyone, under the doctrine of res ipsa loquitur the facts or circumstances accompanying an injury may be such as to permit an inference of negligence on the part of the defendant. The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control and

management used proper care, affords sufficient evidence, or reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by want of care upon the part of the defendant. *Pope* v. *Edward M. Rude Carrier Corporation*, 138 W. Va. 218, 75 S. E. 2d 584; 38 Am. Jur., Negligence, Section 295.

In *Jankey* v. *Hope Natural Gas Company*, 98 W. Va. 412, 127 S. E. 199, discussing the nature and the application of the doctrine of res ipsa loquitur, this Court said:

"It may be conceded that the bare fact of an injury, standing alone and with no supporting evidence, is not sufficient to justify an inference of negligence. It is equally well settled, however, that direct proof of negligence is not necessary. Negligence may be established by proof of facts which warrant its inference. Circumstances surrounding an occurrence are frequently held, if unexplained, to indicate an antecedent or coincident existence of negligence as the efficient cause of that occurrence. In such instances, the doctrine of *res ipsa loquitur* is invoked. This rule was defined and applied in *Snyder* v. *Wheeling Electrical Company*, 43 W. Va. 661, in *Bice* v. *Wheeling Electrical Company*, 62 W. Va. 685, in *Jones* v. *Bridge Company*, 70 W. Va. 374, as well as in other cases decided by this Court.

"In upholding this rule, courts have not intended thereby to exempt a plaintiff from the burden of proving negligence, either affirmatively or by circumstances making it a legitimate inference. This burden remains with a plaintiff. It was so held in *Veith* v. *Hope Salt Co.*, and other cases cited by the defendant, supra. But this court has also held that when the physical facts of an accident themselves create a reasonable probability of negligence, such facts furnish evidence of negligence by force of the maxim, *res ipsa loquitur*. Injuries which do not ordinarily occur, when reasonable care is taken to avoid them, are of themselves evidential facts of negligence."

In *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364, this Court held in point 2 of the syllabus that: "In an action

based upon negligence for the recovery of damages there must be reasonable evidence that the defendant was negligent. When, however, the instrumentality which causes an injury is shown to be under the management and the control of the defendant and the injury is such as in the ordinary course of events does not happen if the person having such management and control uses proper care, the occurrence of the injury furnishes reasonable evidence, in the absence of explanation by the defendant, that it resulted from negligence." See also syllabus, *Ellis* v. *Henderson*, 142 W. Va. 824, 98 S. E. 2d 719.

Under the doctrine of res ipsa loquitur the plaintiff in an action based on negligence is not required to allege and prove a specific negligent act or omission as the proximate cause of the injury; and when it is shown that the instrumentality which causes the injury is under the exclusive control and management of the defendant, that the plaintiff is without fault, and that the occurrence is such as in the ordinary course of events would not happen if due care is exercised, proof of the injury itself affords sufficient evidence to support a recovery, unless the defendant gives an explanation of the occurrence which tends to show that the injury was not due to his want of care. *Pope* v. *Edward M. Rude Carrier Corporation*, 138 W. Va. 216, 75 S. E. 2d 584; *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364; *Jankey* v. *Hope Natural Gas Company*, 98 W. Va. 412, 127 S. E. 199; *Jones* v. *Riverside Bridge Company*, 70 W. Va. 374, 73 S. E. 942; *Bice* v. *Wheeling Electrical Company*, 62 W. Va. 685, 59 S. E. 626.

As already indicated, the doctrine of res ipsa loquitur is applicable to the conditions shown to exist in these consolidated actions. The automobiles of the plaintiffs were damaged by the escape of caustic soda from the manufacturing unit which at the time was under the exclusive management and control of the defendant, the plaintiffs were not at fault, and the escape of the corrosive substance from the unit into the air was such an occurrence as does not ordinarily happen in the operation of the plant.

The cause of the occurrence was unknown to and was not sufficiently explained by the defendant. The testimony elicited from the witness Prohovich on his cross-examination as to the character and condition of the caustic soda manufacturing unit of the plant and the method employed in the manufacture of that product was general and much of it was negative in character. He was not present when the dust and crystals escaped from the unit and most of his knowledge of the matters about which he testified was acquired in the investigation begun by him immediately after the escape of the caustic substances from the unit had occurred and was discovered. His testimony does not state the manner in which the unit was operated, what employees were engaged in its operation, or what any employee did or failed to do immediately before or when the caustic dust and crystals escaped from the unit into the atmosphere in the area of the plant or establish any specific acts performed by any operator of the unit to prevent those substances from escaping from it. The evidence in its entirety fails to show any positive or affirmative acts of due care upon the part of the defendant in connection with the escape of the substances which resulted in damage to the automobiles of the plaintiffs and is devoid of any explanation of that occurrence which showed or tended to show that it was not caused by the negligence of the defendant.

The defendant cites and relies upon *Redman* v. *Community Hotel Corporation*, 138 W. Va. 456, 76 S. E. 2d 759, to sustain its contention that the doctrine of res ipsa loquitur does not apply to these consolidated actions. In that case an explosion of a steam boiler operated by one of the two defendants, or by both of them jointly, the identity of the actual operator and of the person having the exclusive control of the instrumentality not having been clearly established by the evidence, caused the death of the plaintiff's decedent. This Court adhered to and applied the well established rule, recognized in decisions of this Court involving explosions of boilers and explosions in coal mines, that there is no presumption of negligence

to be deduced from the explosion of a boiler, and that in order for the plaintiff to sustain a recovery for an injury caused by such explosions, he must show some specific act of negligence to which such explosions can be attributed. *Redman* v. *Community Hotel Corporation,* 138 W. Va. 456, 76 S. E. 2d 759; *Pope* v. *Edward M. Rude Carrier Corporation,* 138 W. Va. 218, 75 S. E. 2d 584; *Findley, Adm'r.* v. *Coal and Coke Railway Company,* 72 W. Va. 268, 78 S. E. 396; *Dickinson* v. *Stuart Colliery Company,* 71 W. Va. 325, 76 S. E. 654, 43 L. R. A., N. S., 335; *Hanley, Admr.* v. *West Virginia Central and Pittsburg Railway Company,* 59 W. Va. 419, 53 S. E. 625; *Veith* v. *Hope Salt and Coal Company,* 51 W. Va. 96, 41 S. E. 187, 57 L. R. A. 410. This Court held that the doctrine of res ipsa loquitur did not apply to the facts of that case and in the opinion indicated that the evidence did not clearly establish exclusive control of the boiler by either or both defendants but that the evidence did show facts which conclusively rebutted any inference of negligence of the defendants that could have arisen from the application of the doctrine of res ipsa loquitur. The facts in the *Redman* case clearly distinguish it from and render its holding inapplicable to the instant consolidated actions.

Upon a demurrer by the defendant to the evidence introduced by the plaintiff, the demurrant necessarily admits not only the credibility of the evidence demurred to but all inferences of fact that may be fairly deduced from it and, in determining the facts which may be inferred from the evidence, the inference most favorable to the demurree will be made in instances where there is grave doubt as to which of two or more inferences shall be drawn. *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, 70 S. E. 2d 814; *Nichols* v. *Camden Interstate Railway Company,* 62 W. Va. 409, 59 S. E. 968; *Bulkley* v. *Sims,* 48 W. Va. 104, 35 S. E. 971; *Heard* v. *Chesapeake and Ohio Railway Company,* 26 W. Va. 455; *Fowler* v. *Baltimore and Ohio Railroad Company,* 18 W. Va. 579. Upon a demurrer to the evidence the evidence should be interpreted most benignly in favor of the de-

murree in order that he may have all the benefit which might result from a verdict of a jury from which the case has been withdrawn by the demurrant. *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, 70 S. E. 2d 814; *Conner* v. *Jarrett,* 120 W. Va. 633, 200 S. E. 39; *Calloway* v. *Federal Life and Casualty Company,* 113 W. Va. 339, 167 S. E. 877; *Truschel* v. *The Rex Amusement Company,* 102 W. Va. 215, 137 S. E. 30; *Garrett* v. *Ramsey,* 26 W. Va. 345. Upon a demurrer to the evidence, if it be conflicting, judgment in favor of the demurree should be given unless the evidence, considered as a whole and in the light of the inferences properly deducible from it, plainly and decidedly preponderates in favor of the demurrant on some decisive point. *Helvey* v. *Princeton Power Company,* 84 W. Va. 16, 99 S. E. 180. If the evidence demurred to is such that the court should not set aside the verdict of a jury in favor of the demurree, the court, upon a demurrer to such evidence, should give judgment against the demurrant. *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, 70 S. E. 2d 814; *Nichols* v. *Camden Interstate Railway Company,* 62 W. Va. 409, 59 S. E. 698; *Mannon* v. *Camden Interstate Railway Company,* 56 W. Va. 554, 49 S. E. 450; *Heard* v. *Chesapeake and Ohio Railway Company,* 26 W. Va. 455. When the evidence consists of that introduced by both the plaintiff and the defendant, upon a demurrer to the evidence, all the evidence introduced at the trial should be considered by the court and all reasonable inferences from it should be considered in favor of the demurree and judgment should be rendered in his favor, unless the evidence of the demurrant in conflict with the evidence of the demurree plainly and decidedly preponderates in favor of the demurrant on some decisive point, in which case the demurrer should be sustained and judgment should be rendered for the demurrant. *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, 70 S. E. 2d 814; *McGraw* v. *Hash,* 132 W. Va. 127, 51 S. E. 2d 774; *Niland* v. *Monongahela West Penn Public Service Company,* 125 W. Va. 231, 24 S. E. 2d 83; *West Virginia Pulp and Paper Company* v. *J. Natwick and*

*Company,* 123 W. Va. 753, 21 S. E. 2d 368; *Conner* v. *Jarrett,* 120 W. Va. 633, 200 S. E. 39. Upon a demurrer to the evidence, however, the demurrant admits only such inferences of fact as may be fairly deducible from the evidence and only such facts as are fairly deducible. *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, 70 S. E. 2d 814; *Talbott* v. *West Virginia C. & P. Railway Company,* 42 W. Va. 560, 26 S. E. 311; *Mapel* v. *John,* 42 W. Va. 30, 24 S. E. 608, 32 L. R. A. 800.

Under the foregoing principles, insofar as they apply to the evidence in these consolidated actions, it is clear that an inference of negligence upon the part of the defendant which was the proximate cause of the damages of which the plaintiffs complain arises from the doctrine of res ipsa loquitur and that the evidence elicited from the witness Prohovich on cross-examination is entirely insufficient to overcome the inference of such negligence. For that reason the court should have overruled the demurrer of the defendant and rendered judgments in favor of the plaintiffs. Its action in sustaining the demurrer and rendering judgment in favor of the defendant in each of the consolidated actions instituted by the plaintiffs Mecum and Taylor constituted reversible error.

The judgment of the Circuit Court of Kanawha County and the judgment of the Court of Common Pleas of Kanawha County against the plaintiffs Mecum and Taylor are reversed and set aside, and this Court, pronouncing such judgments as should have been entered by the court of common pleas, overrules the demurrer of the defendant and renders judgment in favor of the plaintiff S. Morris Mecum for the stipulated amount of $114.24, with interest and costs, and judgment in favor of the plaintiff Robert H. Taylor for the stipulated amount of $171.36, with interest and costs.

*Reversed and rendered.*